## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JENNIFER JAEGERS SCHMIDT, individually and on behalf of others similarly situated, | |
| Plaintiff, | Case No.: |
| v. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., | |
| Defendant. | |

## <u>NOTICE OF REMOVAL</u>

In accordance with 28 U.S.C. §§ 1441 and 1446, Defendant State Farm Mutual Automobile Insurance Company ("State Farm") removes this action (*Schmidt v. State Farm Mutual Automobile Ins. Co.*, Case No. 22-013100-CK) from the Circuit Court of Michigan for the County of Wayne to the United States District Court for the Eastern District of Michigan. This Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. In support of removal, State Farm states as follows:

1

## BACKGROUND

1.     On November 2, 2022, Plaintiff Jennifer Jaegers Schmidt ("Plaintiff") filed a Complaint for Breach of Contract and Violation of the Duty of Good Faith and Fair Dealing ("Complaint"), on behalf of herself and all others similarly situated, in the Third Judicial Circuit, Wayne County ("State Court Action").

2.     Plaintiff served State Farm with the Summons and Complaint on November 4, 2022. The Summons is attached as Exhibit A. The Complaint is attached as Exhibit B.

3.     Plaintiff claims, individually and on behalf of the putative class, that State Farm breached policies of insurance by undervaluing vehicles deemed a total loss.

4.     Plaintiff's Complaint sets forth two claims for relief: (i) breach of contract; and (ii) breach of the implied covenant of good faith and fair dealing. (Ex. B, Compl. ¶¶ 60-71.)

5.     Plaintiff seeks class certification and appointment of Plaintiff as class representative and their attorneys as class counsel. (*Id.* ¶¶ 51, 56.)

6.     Plaintiff also seeks an award of damages, interest, costs, exemplary damages, attorney fees, and equitable relief. (*See id.* ¶¶ 67, 71.) Plaintiff's Complaint does not quantify the damages sought.

7.   State Farm denies all liability and damages, and it denies that Plaintiff may obtain certification of a class under Rule 23 of the Federal Rules of Civil Procedure or any class action procedural device.

## GROUNDS FOR REMOVAL

### I.   REMOVAL IS TIMELY

8.   This Notice of Removal is filed within 30 days after State Farm was served with the Summons and Complaint on November 4, 2022. (*See* Ex. B; *see also supra* ¶ 2.) Removal of this action is therefore timely under 28 U.S.C. § 1446(b).

### II.   THIS COURT HAS JURISDICTION UNDER CAFA

9.   CAFA reflects Congress's intent to have federal courts adjudicate substantial class actions. *See* S. Rep. 109-14, at 43 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 41; H. Rep. 108-144, at 36-37 (2005). To effectuate this purpose, CAFA provides that putative class actions filed in state court are removable to federal court, and it expands federal jurisdiction over such cases by amending 28 U.S.C. § 1332 to grant original jurisdiction where, as here, the putative class contains at least 100 class members, there is minimal diversity, and the amount in controversy exceeds $5,000,000 in the aggregate for the proposed class, exclusive of interest and costs. 28 U.S.C. § 1332(d).

10.     By design, CAFA "tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). Thus, "by borrowing the familiar 'short and plain statement' standard from Rule 8(a)," Congress "intended to 'simplify the "pleading" requirements for removal' and to clarify that courts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.'" *Id.* at 87 (quoting H.R. Rep. No. 100-889, at 71 (1988)). Accordingly, when a defendant seeks removal under CAFA, its notice need only "contain[] a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

11.     This putative class action satisfies all the jurisdictional requirements under CAFA. Specifically, based on the allegations in the Complaint, State Farm's investigation, and the attached declaration speaking to diversity and the amount in controversy, (1) the parties are minimally diverse; (2) the proposed class consists of 100 or more members; (3) the amount in controversy exceeds the $5,000,000 jurisdictional threshold; (4) the primary defendants are not States, State officials, or other governmental entities; and (5) no CAFA exception applies here. *See* 28 U.S.C. § 1332(d).

### A.     The Parties are Minimally Diverse.

12.     The first CAFA requirement—that the parties be minimally diverse—is satisfied because a least one putative class member is a citizen of a different state than at least one defendant. 28 U.S.C. § 1332(d)(2).

13.     Here, Plaintiff Jennifer Jaegers Schmidt alleges that she is a resident and citizen of Michigan. (Ex. B, Compl. ¶ 20.) Plaintiff alleges that the putative class consists of "[a]ll State Farm Indemnity Company insureds . . . who were or are Michigan residents[.]"[1] (Ex. B, Compl. ¶ 51.)

14.     State Farm is an insurance company organized under the laws of the State of Illinois with its principal place of business in Illinois. (*See id.* at ¶ 21; Decl. of Maureen Hasselmann ("Hasselmann Decl.") ¶ 3, attached as Exhibit C.) State Farm is thus a citizen of Illinois. *See* 28 U.S.C. § 1332(c)(1); *Franzel v. Kerr Mfg. Co.*, 959 F.2d 628, 629 (6th Cir. 1992) ("A corporation is deemed a citizen of any state by which it has been incorporated, and of any state in which its principal place of business is located.").

15.     Accordingly, because there is at least minimal diversity between the parties, the first CAFA requirement is satisfied. *See* 28 U.S.C. § 1332(d)(2).

---

[1] State Farm assumes that Plaintiff intended to allege that the putative class consists of all State Farm Mutual Automobile Insurance Co. insureds, given that State Farm Mutual Automobile Insurance Co. is the named defendant.

## B.    The Putative Class Size Exceeds 100 Members.

16.    The second CAFA requirement—that the putative class consist of at least 100 members—is also met here.

17.    Plaintiff seeks certification of the following putative class:

All State Farm Indemnity Company insureds, from the earliest available time through the date of resolution of this action, who were or are Michigan residents who received a first-party total-loss valuation and payment on an automobile total-loss claim that included a "typical negotiation" or similar adjustment.

(Ex. B, Compl. ¶ 51.)

18.    Plaintiff further alleges that "members of the Class are so numerous that joinder of all individual claims at issue is impracticable." (*Id.* ¶ 53.)

19.    To estimate the number of insureds within or otherwise implicated by the defined putative class, State Farm asked Audatex, the third-party that generates the Autosource valuation reports that Plaintiff alleges State Farm uses to "undervalue the total-loss vehicles," (*see* Ex. B, Compl. ¶ 33), to conduct a preliminary search of claims data to identify State Farm valuations in the State of Michigan that took typical negotiation adjustments to comparable vehicles. (Ex. C, Hasselmann Decl. ¶ 6.) Although Plaintiff alleges no explicit time limitation in the Complaint (*but see* Ex. B, Complaint ¶ 53 (alleging on information and belief that State Farm "has issued hundreds of thousands (if not millions) of automobile insurance

policies in Michigan with collision coverage over the past six years")), Plaintiff does seek certification of a putative class "from the earliest allowable time through the date of resolution of this action," (*id.* ¶ 51). The statute of limitations for breach of contract claims under Michigan law is six years, Mich. Comp. Laws § 600.5807(9), so "the earliest allowable time" would be six years before filing, or November 2, 2016.

20. However, no claims data from Audatex is available from before 2018 due to an anonymization protocol, so the data are likely under-inclusive. (Ex. C, Hasselmann Decl. ¶ 6.) And the Audatex data also include valuations for all State Farm entities, not just State Farm Mutual Automobile Insurance Company, so the data also are likely over-inclusive. (Ex. C, Hasselmann Decl. ¶ 6.) Setting aside these caveats, State Farm has identified thousands of claims from the Audatex data, most of which likely fall within Plaintiff's putative class definition. (Ex. C, Hasselmann Decl. ¶ 7.) That figure is well over the 100 putative class member threshold.

21. Accordingly, because Plaintiff's putative class definition includes more than 100 putative class members, the requisite putative class size is established. *See* 28 U.S.C. § 1332(d)(5)(B).

### C.    The Minimum Amount in Controversy Is Satisfied.

22.    The third CAFA requirement—the minimum amount in controversy—is also met. The amount in controversy must exceed the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of individuals comprising a putative class are aggregated. *Id.* § 1332(d)(6).

23.    A notice of removal need include only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co.*, 574 U.S. at 89. Similarly, Local Rule 81.1(b) provides: "The removing defendant must … allege in the notice of removal that the amount in controversy exceeds the required jurisdictional amount, and … set forth the facts or other reasons that the removing defendant possesses that support that allegation[.]" The Court may consider affidavits and declarations relevant to the amount in controversy at the time of removal. *See Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001).

24.    Once a defendant points to an adequate jurisdictional amount, the case belongs in federal court unless the plaintiff demonstrates to a legal certainty that "[Plaintiff's] claim, as aggregated, does not meet the $5 million

amount in controversy requirement[.]" *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 409 (6th Cir. 2008).

25.    And when determining the amount in controversy, courts may consider actual damages, punitive damages, and statutory attorney fees. *See Hayes*, 266 F.3d at 572 (punitive damages); *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1168 (6th Cir. 1975) (attorney fees); *Pa. R.R. Co. v. City of Girard*, 210 F.2d 437, 439 (6th Cir. 1954) (injunction-related costs).

26.    Here, Plaintiff alleges that State Farm "systemically fails to pay its insureds the [actual cash value] of their total-loss vehicles by applying an improper and unreasonable Typical Negotiation Adjustments ... to the value of the vehicle." (Ex. B, Compl. ¶ 7.) As damages, Plaintiff seeks—on behalf of herself and members of the putative class—compensatory damages for the "underpayment to Plaintiff and each Class member" as a result of "fail[ure] to fully pay [actual cash value]." (*Id.* ¶ 64; *see also id.* ¶¶ 67, 71.) Plaintiff also seeks attorney fees and costs. (*Id.* ¶¶ 67, 71.)

27.    State Farm denies that it undervalued the actual cash value of totaled vehicles in Michigan.

28.    However, based on State Farm's investigation as described above and in the Hasselmann Declaration, State Farm has identified thousands of claims from the Audatex claims data, most of which are likely to fall within

Plaintiff's putative class definition. (Ex. C, Hasselmann Decl. ¶ 7.) That Audatex claims data also show that the total amount of typical negotiation adjustments applied to those claims is well over the $5,000,000 jurisdictional threshold. (Ex. C, Hasselmann Decl. ¶ 7.)

29.     Accordingly, CAFA's $5,000,000 amount-in-controversy requirement is satisfied.

## D.     The Primary Defendant Is Not a State, State Official, or Government Entity.

30.     CAFA also requires that the primary defendant not be a state, state official, or other governmental entity against whom the district court may be foreclosed from ordering relief. 28 U.S.C. § 1332(d)(5)(A). The sole defendant named in the Complaint is State Farm, which satisfies this requirement. (Ex. B, Compl. ¶¶ 1, 21.)

## E.     The Exceptions to CAFA Do Not Apply.

31.     Plaintiff bears the burden of establishing that an exception to CAFA applies. *Mason v. Lockwood, Andrews, & Newnam, P.C.*, 842 F.3d 383, 388 (6th Cir. 2016) ("[T]he party seeking to remand under an exception to CAFA bears the burden of establishing each element of the exception[.]").

32.     CAFA provides mandatory exceptions to the application of federal jurisdiction under 28 U.S.C. § 1332(d)(4)-(5), and one discretionary exception to federal jurisdiction under 28 U.S.C. § 1332(d)(5).

33.     Plaintiff's Complaint makes clear that none of these exceptions applies. Each of the CAFA exceptions requires, as a starting point, either an in-state defendant, *see* 28 U.S.C. § 1332(d)(3)-(4) (requiring either "significant relief" to be sought from an in-state defendant or requiring the "primary defendant" to be an in-state defendant), or requiring that all claims relate solely to securities or the internal governance of a business entity, *id.* § 1332(d)(9). Here, the only defendant is State Farm, which is a foreign corporation, and none of the claims relates to securities or internal governance. Therefore, no CAFA exception applies.

## VENUE

34.     Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b)(2) and 1441(a).

## PROCESS, PLEADINGS, AND ORDERS SERVED

35.     In accordance with 28 U.S.C. § 1446(a), copies of the pleadings, court orders, and the docket in the State Court Action are attached as Exhibit D. Plaintiff did not file a separate jury demand in state court. Plaintiff's demand is located on page 15 of the Complaint.

## NOTICE OF REMOVAL

36.     In accordance with 28 U.S.C. § 1446(d), the filing of a copy of this Notice of Removal with the clerk of the state court effects the removal of the

State Court Action. A copy of the notice of filing of notice of removal filed contemporaneously in the State Court Action is attached as Exhibit E.

## **NO WAIVER**

37.    No waiver and no admission of fact, law, or liability, including without limitation the amount of damages, if any, is intended by this Notice of Removal, and all defenses, affirmative defenses, and rights are reserved.

## **CONCLUSION**

For the reasons set forth above, State Farm removes this action to the United States District Court for the Eastern District of Michigan.

Dated: December 2, 2022          Respectfully submitted,

                                 *s/Jeffrey A. Crapko*
                                 Jeffrey A. Crapko (P78487)
                                 Nashara A.L. Peart (P83078)
                                 Miller, Canfield, Paddock & Stone, P.L.C.
                                 150 West Jefferson, Suite 2500
                                 Detroit, MI 48226
                                 Phone:  248.267.3237
                                 Fax:     313.496.7500
                                 Email:  crapko@millercanfield.com
                                 Email:  peart@millercanfield.com

                                 Peter W. Herzog III (admitted to EDMI)
                                 Wheeler Trigg O'Donnell LLP
                                 211 N. Broadway, Suite 2825
                                 St. Louis, MO 63102
                                 Phone:  314.326.4128
                                 Fax:     303.244.1879
                                 Email:  pherzog@wtotrial.com

                                 Eric L. Robertson (admitted to EDMI)
                                 Wheeler Trigg O'Donnell LLP
                                 370 Seventeenth Street, Suite 4500
                                 Denver, CO 80202-5647
                                 Phone:  303.244.1800
                                 Fax:     303.244.1879
                                 Email:  robertson@wtotrial.com

                                 *Attorneys for State Farm Mutual*
                                 *Automobile Insurance Co.*

## **CERTIFICATE OF SERVICE (CM/ECF)**

I certify that on December 2, 2022, I electronically filed the foregoing

with the Clerk of Court using the ECF system which will send notification of

such filing to the ECF participants.


Dated: December 2, 2022            *s/ Jeffrey A. Crapko*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

JENNIFER JAEGERS SCHMIDT,
individually and on behalf of others
similarly situated,

          Plaintiff,

   v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE CO.,

          Defendant.

Case No.:

## <u>INDEX OF EXHIBITS</u>
## <u>TO NOTICE OF REMOVAL</u>

| <u>Exhibit</u> | <u>Description</u> |
| --- | --- |
| A | Summons |
| B | Complaint |
| C | Hasselmann Declaration |
| D | Verification of State Court Records |
| E | State Court Notice of Filing Notice of Removal |

# Exhibit A

| **STATE OF MICHIGAN**<br>**THIRD JUDICIAL CIRCUIT**<br>**WAYNE COUNTY** | **SUMMONS** | **CASE NO.**<br>**22-013100-CK**<br>**Hon.Sheila Ann Gibson** |
|---|---|---|

| Court address : 2 Woodward Ave., Detroit MI 48226 | | Court telephone no.: 313-224-5207 |
|---|---|---|

| Plaintiff's name(s), address(es), and telephone no(s)<br>Schmidt, Jennifer Jaegers | v | Defendant's name(s), address(es), and telephone no(s).<br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no<br><br>Andrew J. McGuinness 42074<br>P O # 7711<br>Ann Arbor, MI 48107 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

### Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

### Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court,

where it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.

| **SUMMONS** |
|---|

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>11/2/2022 | Expiration date*<br>2/1/2023 | Court clerk<br>Tamika Wright-Evans |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01 (9/19)**          **SUMMONS**          MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105



# Exhibit B

STATE OF MICHIGAN
THIRD JUDICIAL CIRCUIT
WAYNE COUNTY

| | |
|---|---|
| Jennifer Jaegers Schmidt, individually and on behalf of others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>　　　　Defendant. | Civil Case No.: 22-CK-_____<br><br><br>CLASS ACTION<br><br><br>JURY DEMAND<br>(MCR 2.508(b)) |

Andrew J. McGuinness (P42074)
ANDREW J. McGUINNESS, ESQ.
P O Box 7711
Ann Arbor, MI  48107
(734) 274-09374
drewmcg@topclasslaw.com
_____/

> There is no other pending or resolved civil action arising out
> of the transaction or occurrence alleged in this Complaint, nor
> has any such action previously been filed and dismissed after
> having been assigned to a judge.

## **CLASS ACTION COMPLAINT**

Plaintiff Jennifer Jaegers Schmidt ("Plaintiff"), individually and on behalf of others similarly situated, brings this suit as a class actual pursuant to Michigan Court Rule 3.501 against Defendant State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm"), and further states as follows:

## INTRODUCTION

1.      This is a Class Action lawsuit by Plaintiff, who was the named insured under an automobile insurance policy issued by State Farm for private passenger auto physical damage including comprehensive and collision coverage (the "Policy"), pursuant to which Defendant was required to pay the cost to repair an insured vehicle up to the "Actual Cash Value" ("ACV") of the insured vehicle. A copy of the Policy is in the possession of the Defendant.

2.      Insureds, such as Plaintiff and the putative class members, pay a premium in exchange for State Farm's promise to repair any damage to an insured vehicle caused by a covered peril. However, State Farm's obligation to repair any damage is not limitless; rather, it is limited (or capped) to the ACV of the insured vehicle. For example, State Farm is not obligated to spend $20,000 to repair extensive damage to a vehicle that is only worth $5,000. Under circumstances where the cost to repair damage exceeds the value of the vehicle (less retained value), the vehicle is considered a "total loss." If a total loss occurs, State Farm's contractual obligation is limited to paying the ACV of the total-loss vehicle.

3.      The goal of ACV in insurance contracts is that of indemnity. By promising to pay the cost to repair the vehicle limited at ACV in the event of a total loss, Defendant promises to put its insureds back to their pre-loss position. In Michigan, ACV has been judicially defined as replacement cost minus depreciation.

4.      State Farm's contractual obligation to pay ACV must be construed as consistent with applicable Michigan law, which provides that State Farm must make ACV valuations on the basis of replacement cost minus normal depreciation.

1

5.     When determining the ACV of a total loss vehicle, it is improper for an automobile insurance company, such as State Farm, to undervalue and underpay the claims by manipulating the data used to value the vehicles.

6.     State Farm is required under its Policies and Michigan law to proffer a cash settlement on the basis of replacement cost minus depreciation, and is not entitled to make unsupported, arbitrary reductions to reduce claims payments to insureds.

7.     Notwithstanding its obligations, State Farm systemically fails to pay its insureds the ACV of their total-loss vehicles by applying an improper and unreasonable Typical Negotiation Adjustments ("Negotiation Reduction") to the value of the vehicle. This reduction is contrary to appraisal standards and methodologies, is not based in fact, is contrary to the used-car industry's pricing and inventory management practices, and is applied by Defendant solely as a basis to reduce the amount paid to its insureds after a total loss.

8.     The across-the-board Negotiation Reduction does not reflect reality. Indeed, Defendant applies the "typical negotiation" adjustment without contacting the identified dealerships or sellers, or considering whether the online retailer ever discounts its vehicles. Notably, in applying a universal percentage-based "typical negotiation" adjustment reduction, Defendant failed to consider that it is increasingly the dominant practice in the used car market to avoid price negotiation by implementing "no haggle" pricing, particularly as to internet-posted prices. Particularly during the COVID-19 pandemic, and the related supply chain problems with parts such as electronics for vehicles, used cars have been selling for a premium, with sale price frequently exceeding the posted price.

9.     Regardless, State Farm applied a Negotiation Reduction of approximately 10% for all comparable vehicles listed in Plaintiff's valuation report despite that the vehicle prices were

2

pulled from multiple different dealerships. (Exhibit A ("Valuation Report") at pp. 5-6). There was deducted an identical 10% downward reduction to each of the base values of the four comparable vehicles, which were then used to derive the value of Plaintiff's total loss vehicle, resulting in a 10% deduction in Plaintiff's vehicle value and Plaintiff's ultimate insurance payout. *Id.*

10.     The reduction described in the preceding paragraph was wholly arbitrary and not based on any statistical, objective, or verifiable data.

11.     Moreover, to arrive at the 10% Negotiation Adjustment, State Farm categorically excluded transactions that undermine its flawed thesis: for example, transactions where the sold price exceeds the list price and every transaction where the sold price equaled the advertised price, allowing Defendant to thumb the scale in its favor. This practice ignores current market realities in which dealerships often charge more than advertised price to customers.

12.     The Negotiation Reduction is not documented nor justified in detail. The basis for the settlement offer with the 10% reduction and how it was derived was never explained to the Plaintiff. The only purported explanation for the reduction in the offer is found in Plaintiff's multi-page valuation report is a general, nondescript statement buried deep in the document. (*See* Exhibit A at pp. 5-6) (providing: "[t]he advertised price of [each comparable vehicle advertised price] was adjusted to account for typical negotiation"). No other explanation was provided by State Farm to justify the Negotiation Reduction.

13.     The Negotiation Reduction was applied on each of the comparable vehicles on top of adjustments for differences such as mileage, options, and equipment. The deduction is neither specific nor appropriate as to dollar amount, and no explanation is provided as to the evidentiary basis for the 10% across-the-board reduction.

14.     State Farm is engaged in a pattern and practice of deliberately undervaluing comparable and total loss vehicles when paying first-party automobile total loss claims, which results in State Farm underpaying insureds for the ACV of their total-loss vehicles in breach of the clear terms of State Farm's insurance policies.

15.     Plaintiff and the putative class members lived up to their end of the bargain by paying the premiums owed and abiding by all contractual requirements.

16.     State Farm did not live up to its obligations under the subject policies. Rather, State Farm reduced the ACV value of total-loss vehicles through use of the arbitrary and unsupported Negotiation Reduction.

17.     On information and belief, Defendant's standardized policy language as to coverage for the ACV of total-loss vehicles is present in every auto policy issued by Defendant in Michigan.

18.     State Farm's failure to pay the full and complete ACV of insured vehicles on first-party claims constitutes a material and bad faith breach of contract as to Plaintiff and every member of the putative class defined herein.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to Mich. Comp. Laws §§ 600.601, 600.605, because the amount in controversy exceeds $25,000.

20.     At all relevant times, Plaintiff and putative class members were Michigan policyholders and citizens.

21.     The defendant is a citizen of Illinois because it is incorporated in the State of Illinois and keeps its principal place of business in Bloomington, Illinois.

4

22.     Venue in this Court is proper because Defendant State Farm conducts business in Wayne County, Michigan.

## NATURE OF THE CASE

23.     Defendant is an automobile insurer in Michigan and provides, *inter alia*, coverage for first-party property damage under collision and/or comprehensive coverage. Such policies, issued to Plaintiff and all putative class members, are form policies that promise to pay for loss up to a limit on liability of ACV.

24.     Most car accidents are "partial" losses, which is the term used where insurers (including Defendant) pay to repair the damage to a vehicle. Where repair of the vehicle is impossible or uneconomical, however, the loss is considered a "total loss." When Defendant determines that a vehicle is a total loss it elects to pay the vehicle's ACV.

25.     Pursuant to the basic tenets of insurance law, once Defendant elects to pay ACV, it is bound by that election and cannot thereafter change its mind and decide later to pay the cost to repair the vehicle. *See* 12A Couch on Ins. § 176.23. Put differently, when Defendant declares a vehicle a total loss and voluntarily invokes its limitation of liability, it is obligated under its insurance Policy to pay the ACV of the vehicle to the insured.

26.     Under Defendant's Policy with Plaintiff (and and its similar policies with putative class members), in the event of a total loss it must pay the ACV of the covered vehicle. The Policy does not define ACV.

27.     Total loss scenarios are taxing to the insured. Not only has the insured likely suffered more than a minor accident – and thus often dealing with potential medical injuries – there are numerous insurance-related issues, such as payment for storage, investigation of the vehicle and claim, finding a replacement vehicle, and so forth.

5

28.    The Michigan Supreme Court has interpreted undefined ACV to mean replacement cost less depreciation. *Smith v. Michigan Basic Property Ins. Ass'n*, 441 Mich. 181 (1992). Replacement cost means a reasonable estimate of the cost of replacing on the market an item of personal property. *Id.*

29.    Defendant fails entirely to abide by its contractual requirements by failing to pay its insureds the ACV of their vehicles.

30.    Defendant purports to calculate the ACV of total-loss vehicles via a third-party vendor, Audatex or AudaExplore, through a system called Autosource Market-Driven Valuation ("Autosource"). Ostensibly, the Autosource system identifies the list price of comparable vehicles, which it then adjusts based on factors such as differences in equipment, packages, and/or condition between the comparable vehicle and the total-loss vehicle.

31.    However, in violation of Michigan law and its policy promise to pay ACV, Defendant incorporates unfounded Negotiation Reductions into its Autosource calculations.

32.    Defendant represents that the Negotiation Reduction reflects some sort of average difference between list price and "what the dealer would be willing" to sell it for. But Defendant does not actually base the Negotiation Reduction on conversations with the sellers of the comparable vehicles or even statistically valid data or calculations. Indeed, the 10% reduction applied to Plaintiff's vehicle is not supported by a comparison of list versus sold vehicles prices within the State of Michigan.

33.    Upon information and belief, State Farm's 10% Negotiation Reduction is arbitrary, not based on valid data, and is nothing more than another illegitimate and capricious way to undervalue the total-loss vehicles.

34.     Upon information and belief, Defendant instructs Autosource to apply the Negotiation Reduction. Other insurers who use the Autosource system do not instruct Autosource to apply the Negotiation Reduction to the price of comparable vehicles.

## PLAINTIFF'S ACCIDENT AND VALUATION

35.     At all times relevant, Plaintiff was insured under a policy of insurance issued by Defendant for a 2005 Chevrolet Trailblazer.

36.     On or about January 1, 2021, Plaintiff's vehicle sustained damage. After Plaintiff submitted a physical damage claim, Defendant declined to pay to repair the vehicle, determined it was a total-loss, and elected to pay Plaintiff a cash amount for the ACV of the vehicle.

37.     Defendant purportedly determined that the vehicle value was $2,375.00, to which Defendant added sales tax and a title fee and subtracted the deductible for a total of $2,040.50. *See* Exhibit B ("Settlement Letter") at p. 1.

38.     To arrive at this estimated vehicle value, Defendant relied on the Autosource valuation report, which purports to contain the values of comparable vehicles listed for sale (or sometimes recently sold) in Plaintiff's geographic area. The report also contains a purported valuation for Plaintiff's total-loss vehicle, which is based on the advertised prices for the comparable vehicles listed in the report. The report then adjusts the advertised prices of the comparable vehicles to account for differences in equipment, mileage, and vehicle configuration. (Exhibit A).

39.     State Farm then applied the 10% Negotiation Reduction to each comparable vehicle, resulting in an across-the-board deduction in vehicle price for each comparable vehicle, which thereby caused a reduction in the vehicle value of Plaintiff's total-loss vehicle. Defendant

provided no data specific to the comparable vehicles or any explanation of industry practices in the valuation report that would support the Negotiation Reduction. (*Id.*).

40. Plaintiff does not dispute the accuracy of the advertised prices for the comparable vehicles. Plaintiff does not dispute in this Complaint that the comparable vehicles are a fair representation of comparable vehicles in the market area. Plaintiff does not dispute in this Complaint that State Farm can adjust the comparable vehicles based on differences (if any) in equipment, mileage, and vehicle configuration. Plaintiff does not dispute in this Complaint that State Farm accurately identifies differences (if any) in equipment, mileage, and vehicle configuration. And, Plaintiff does not dispute in this Complaint the amount of the adjustments State Farm applied to account for the differences (if any) in equipment, mileage, and vehicle configuration.

41. Put differently, Plaintiff does not challenge in this Complaint the Autosource methodology except for the application (and the "calculation") of the Negotiation Reduction, which Plaintiff alleges is arbitrary, deceptive, inaccurate, and made in bad faith.

42. By failing to pay full ACV by virtue of the Negotiation Reduction, Defendant failed to put Plaintiff back to her pre-loss position and thereby breached its insurance policy.

**DEFENDANT'S CONDUCT BREACHES ITS CONTRACTS AND MICHIGAN LAW**

43. Defendant is aware that the Negotiation Reduction applied in the Autosource valuation report results in anti-contractual insufficient claims payments.

44. The arbitrary and capricious vehicle values provided by Autosource, because of the Negotiation Reductions, are lower than the values of a comparable automobile vehicle and concomitantly lower than the vehicle's replacement cost minus depreciation. Moreover, it is lower

8

than the vehicle's ACV, as reasonably understood under the Policy and as conformed to Michigan law.

45. Defendant's failure to properly pay the ACV of an insured's loss constitutes a breach of contract.

46. Moreover, the aforementioned conduct – and breaches of contract – are the result of actions that constitute bad faith, and are capricious and arbitrary in violation of Defendant's duties and obligations to its insureds.

47. Defendant's conduct set forth herein and use of the Negotiation Reduction violate Defendant's "duty of good faith and fair dealing" by failing to act fairly and in good faith with its insureds.

48. Upon information and belief, Defendant intentionally undervalues the total-loss claims through application of the Negotiation Reduction and otherwise violates its duty of good faith and fair dealing and the covenant of good faith applicable under Michigan law.

49. Defendant's Policy, to the extent inconsistent, must be conformed to comply with Michigan law.

50. All conditions precedent to the initiation of this suit have been satisfied.

## **CLASS ACTION**

51. Pursuant to Michigan Court Rule 3.501, Plaintiff seeks to certify and represent the following class (the "Class"):

> All State Farm Indemnity Company insureds, from the earliest allowable time through the date of resolution of this action, who were or are Michigan residents who received a first-party total-loss valuation and payment on an automobile total-loss claim that included a "typical negotiation" or similar adjustment.

9

52. Excluded from the Class are Defendant and its agents, employees, subsidiaries, parents, and related entities, as well as the Judge assigned to this case and his or her staff employees. Also excluded from the Class are the undersigned counsel and anyone employed in their law firms.

53. **Numerosity:** On information and belief, State Farm is one of the principal automobile insurers in Michigan, who has issued hundreds of thousands (if not millions) of automobile insurance policies in Michigan with collision coverage over the past six years. Although unable to allege a precise number of Class members absent confirmatory discovery, upon information and belief, including investigation by the undersigned and examination of the premiums written by Defendant over the past ten years, Plaintiff reasonably believes that the number of members of the Class numbers in the thousands, such that members of the Class are so numerous that joinder of all individual claims at issue is impracticable. Thus, the Class are sufficiently numerous within the meaning of Rule 3.501(A)(1)(a).

54. **Commonality:** This litigation raises common questions of law and fact subject to common resolution within the meaning of Rule 3.501(A)(1)(b), including:

    a. Whether Defendant applied a typical negotiation adjustment for total loss claims for a given time period for automobile policies in Michigan;

    b. whether Defendant's application of a typical negotiation adjustment results in a breach of Defendant's contractual obligation to pay ACV;

    c. whether Defendant's application of a typical negotiation adjustment is a breach of the covenant of good faith and fair dealing;

    d. whether Plaintiff and Class members are entitled to damages and the measure of damages owed.

10

55.  **Typicality:** Plaintiff's claims and the defenses thereto are typical of members of the Class within the meaning of Rule 3.501(A)(1)(c). Defendant injured Plaintiff and members of the Class through uniform misconduct and Plaintiff's legal claims arise from the same core practices. Plaintiff suffered the same harm as all Class members and Plaintiff's interests are identical to those of the other Class Members.

56.  **Adequacy:** Plaintiff will adequately – and zealously – protect the interests of members of the Class. Plaintiff is unaware of any interest in conflict with those of the Class, and Plaintiff and the undersigned have sufficient and adequate resources to prosecute this claim. Plaintiff is sufficiently knowledgeable concerning the subject matter at issue and is committed to protecting putative class members from any unfair or harmful conduct. Moreover, Plaintiff has retained counsel who collectively have successfully litigated hundreds of class actions, including in the insurance context, through settlement and litigated judgments. The undersigned counsel isa member of the bar of this Court who has extensive experience in class litigation and is well-versed in Michigan law and local rules and procedures. Plaintiff has also retained co-counsel who are members in good standing of the bar of the State of Florida, who plan to move for *pro hac vice* admission in due course. As such, the adequacy requirement of Rule 3.501(A)(1)(d) is satisfied.

57.  **Predominance:** The aforementioned common issues of law and fact predominate over any individual issues within the meaning of Rule 3.501(A)(1)(b). Issues of liability are common to the class, and, as such, even if issues of damages are individualized, that would not preclude class treatment. Moreover, while the *amount* of damages will vary, the *measure* of damages will not.

58.  **Superiority:** Class treatment is superior to any other viable alternative method of adjudication within the meaning of Rule 3.501(A)(1)(e), in that:

11

a.  Neither the size of the Class, nor any other factor, make it likely that difficulties will be encountered in the management of this case as a class action;

b.  The prosecution of separate actions by individual Class members, or the individual joinders of all Class members in this action, is impracticable and would create a significant and unnecessary burden on the resources of the courts and could result in inconsistent adjudication, while a single class action can determine, with judicial economy, the rights of each member of the Class;

c.  Because of the disparity of resources available to Defendant versus those available to individual members of the Class, prosecution of separate actions would work a financial hardship;

d.  The conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each Class member and meets all due process requirements. A class action is also superior to the maintenance of these claims on an individual basis when all actions arise out of the same circumstances and course of conduct; and

e.  Because the claims are relatively small compared to the cost, time, and expense of litigation, individual actions will be rendered financially impractical, if not impossible.

59.    Class members can be identified and ascertained through objective criteria within Defendant's own possession.

### COUNT I: BREACH OF CONTRACT
**(on behalf of the Plaintiff and the Class)**

60.    Paragraphs 1–59 are hereby incorporated by reference.

61.    This Count is brought by Plaintiff individually and on behalf of the Class.

62.     Plaintiff and all members of the putative Class paid all premiums and otherwise satisfied all conditions precedent, as evidenced by, *inter alia*, the fact that Defendant determined the claims were covered claims.

63.     Plaintiff and all members of the putative class made claims under their insurance contracts, which Defendant determined to be total losses. Defendant purported to pay Plaintiff and each Class member the ACV of their totaled vehicles.

64.     Defendant, however, failed to fully pay ACV because Defendant applied the arbitrary and/or inaccurate Negotiation Reduction to comparable vehicles, resulting in an across-the-board reduction in vehicle valuations, resulting in an underpayment to Plaintiff and each Class member.

65.     Given the duties and obligations imposed by the terms and conditions of the form insurance contract, interpreted in light of and (if necessary) conformed to Michigan law, Defendant's application of the Negotiation Reduction constituted a breach of Defendant's obligations under its insurance contracts.

66.     Plaintiff and putative members of the Class were damaged by Defendant's breaches of contract in amounts that will be demonstrated according to proof.

67.     Plaintiff and putative members of the Class are entitled to compensatory damages, penalties, costs, attorneys' fees, and all other relief allowable by law and/or that this Court deems just and proper.

### COUNT II: VIOLATION OF DUTY OF GOOD FAITH AND FAIR DEALING
**(on behalf of Plaintiff and the Valuation Class)**

68.     Paragraphs 1–59 are hereby incorporated by reference.

69.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each

13

other in a way that could not have been contemplated at the time the contract was drafted; to do anything that will destroy the other party's right to receive the benefit of the contract; and to prevent a party that reserves discretion from exercising that discretion in bad faith.

70.     Defendant's application of an arbitrary and statistically invalid Negotiation Adjustment was made in bad faith for no purpose other than to minimize Defendant's payment obligations under its insurance contracts.

71.     As a result, Plaintiff and members of the putative Class are entitled to compensatory damages, along with all penalties, attorneys' fees, costs, expenses, and any other relief allowable by law and/or that this Court deems just and proper.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually, and on behalf of the Class that include all other persons similarly situated, prays that State Farm Mutual Automobile Insurance Company be required to appear and answer the Complaint, and after due proceedings had, that there by judgment rendered herein in favor of Plaintiff and the Class, and against Defendant as follows:

a) For an order certifying this action as a class action on behalf of the Class, with Plaintiff serving as representative of the Class and with the undersigned serving as Counsel for the Class;

b) For notice to be sent to the Class in a form and manner approved by the Court and comporting with due process;

c) For an award of compensatory damages in amounts owed pursuant to the policies of insurance and Michigan law;

d) For all penalties, expenses, and relief allowable by law;

e) For all other damages according to proof;

14

f)  For an award of attorneys' fees and expenses;

g)  For costs of suit incurred herein;

h)  For pre-judgment and post-judgment interests on any amounts awarded; and

i)  For such other general and/or equitable relief to which the Plaintiff and/or the Class

may be entitled that this Court deems just and proper.

### JURY DEMAND

Plaintiff demands trial by jury on all issues.

Dated: November 2, 2022                     Respectfully submitted,

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
P O Box 7711
Ann Arbor, MI  48107
(734) 274-9374
drewmcg@topclasslaw.com

***Attorney For Plaintiff and the Proposed Class***

# EXHIBIT A

Report Date 01/06/21                                                                                                    2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon

Solera | Audatex    # Autosource
## Market-Driven Valuation™

State Farm Insurance is dedicated to delivering exceptional service to you in reference to your claim 22-15C7-45P01 from loss date 01/01/2021 on a 2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon. State Farm Insurance has selected Audatex, an independent vehicle valuation company, to prepare a comprehensive vehicle valuation for your vehicle. This valuation report was prepared specifically for your vehicle and represents a fair and accurate value driven by the retail used vehicle market.

In these pages, you will find:
=> Vehicle Inspection
=> Market Overview
=> Valuation Detail

## Market Value
## $2,375



---

**The Valuation Process**

The breadth and depth of the Audatex used vehicle database makes Autosource the most comprehensive market-driven valuation process available. Audatex has been determining locally sensitive, fair, and accurate market values for vehicles since 1985, with more than 30 million vehicles valued. The Autosource Market Value includes vehicles for sale at dealerships and private party sellers, starting right in the local market.

---

**Valuation Detail**

**1. 2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon**

|  | Comparable 1 | Your Vehicle | Adjustments |
|---|---|---|---|
| **Price** | Pontiac, Mi |  | **$3,596** |
| Odometer | 206,207 Mi(Actual) | 238,151 Mi(Actual) | -240 |
| Equipment | OnStar System |  | -70 |
|  |  | Roof Rack Cross Bars | 5 |
|  |  | Tow Hooks | 5 |
| Packages |  | Preferred Equipment Pkg. | 50 |
|  |  | Comparable 1 Adjusted Price | $3,346 |

**2. 2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon**

|  | Comparable 2 | Your Vehicle | Adjustments |
|---|---|---|---|
| **Price** | Celina, Oh |  | **$4,397** |

---

Report Date 01/06/21                                                          2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon

| Odometer | 127,677 Mi(Actual) | 238,151 Mi(Actual) | -830 |
| | Locking Differential | | -25 |
| | MP3 Decoder | | -15 |
| | OnStar System | | -70 |
| | Power Drivers Seat | | -30 |
| | Rear Entertainment Systm | | -130 |

| | | Comparable 2 Adjusted Price | $3,297 |

### 3. 2005 Chevrolet Trailblazer EXT LT 4WD 4D Wagon

| | Comparable 3 | Your Vehicle | Adjustments |
| --- | --- | --- | --- |
| **Price** | Battle Creek, Mi | | **$3,215** |
| Odometer | 182,000 Mi(Actual) | 238,151 Mi(Actual) | -420 |
| | | Cruise Control | 30 |
| | | Roof Rack Cross Bars | 5 |
| | | Tow Hooks | 5 |
| Packages | | Preferred Equipment Pkg. | 50 |

| | | Comparable 3 Adjusted Price | $2,885 |

### 4. 2005 Chevrolet Trailblazer EXT LT 4WD 4D Wagon

| | Comparable 4 | Your Vehicle | Adjustments |
| --- | --- | --- | --- |
| **Price** | Holland, Mi | | **$4,347** |
| Odometer | 148,118 Mi(Actual) | 238,151 Mi(Actual) | -675 |
| | Automatic Dimming Mirror | | -20 |
| | Bose Sound System | | -50 |
| | Navigation System | | -200 |
| | OnStar System | | -70 |
| | Power Adjustable Pedals | | -15 |
| | Compact Disc W/Tape | AM/FM CD Player | -15 |
| | | Roof Rack Cross Bars | 5 |
| | Rear Entertainment Systm | | -130 |
| | Rain-Sensing W/S Wipers | | -5 |
| | Leather Seats | Velour/Cloth Seats | -125 |
| | | Tow Hooks | 5 |

| | | Comparable 4 Adjusted Price | $3,052 |

**Final Market Value Calculation**

| 1. 2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon | $3,346 |
| 2. 2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon | $3,297 |
| 3. 2005 Chevrolet Trailblazer EXT LT 4WD 4D Wagon | $2,885 |
| 4. 2005 Chevrolet Trailblazer EXT LT 4WD 4D Wagon | $3,052 |

| | Average Price | $3,145 |

**Condition**

| Category | Typical Condition | Loss Vehicle Condition | |
| Body Condition | Moderate Damage | Serious Damage | -770 |

| | **Total Condition Adjusted Market Value** | **$2,375** |

| | | |
|---|---|---|
| Sales Tax 6.0000% | | 142.50 |
| Deductible | | -500.00 |
| **Net Adjusted Value** | | **$2,017.50** |

This valuation was processed using our Multiple Comparable valuation methodology.

---

## Valuation Notes

- o **Loss vehicle description was provided by State Farm Insurance**
- o **Adjustments of Special Note**
  - The requested Exception valuation has been processed using one or more Comparables in order to meet state regulatory requirements.
  - An odometer adjustment of 0.75 cents per mile/kilometer has been applied. This adjustment is based on the vehicle year, vehicle category and market area. Odometer adjustments are capped at 40% of the vehicle's starting value.
  - Typical miles for this 2005 Chevrolet Trailblazer EXT in Michigan is 158,145.
  - No special adjustments were made for this vehicle.
  - All values are in U.S. dollars.
- o **Autosource Valuation Process**
  - Over 8,000,000 vehicles are entered weekly into the database used for researching this value. This database includes dealer inspected, dealer inventory, dealer advertised, phone verified and advertised private party vehicles.
  - The originating search area for this valuation was Lansing, Michigan.
  - The market area expansion was authorized by Autosource Guidelines.
  - The value of the Package adjustments displayed include only those items that cannot be purchased individually. Other equipment items included in the package that can be purchased separately are adjusted with the vehicle equipment, and these adjustments are noted by the applicable options.
  - 
- o **Other Adjustments or Comments**
  - est & vir completed vir off copart photos due to covid-19, cond rating assumed typical unless photos supported different rating.
  - The tax was calculated based on a date of loss of 01/01/2021 using zip 48911-6761, in Lansing, County, Michigan. The city may vary from search area to reflect correct tax location.

| Area | Taxed | Rate | Total | Tax % of Market Value |
|---|---|---|---|---|
| Michigan | $2,375 | 6.0000% | $142.50 | 6.0000% |
| | | Total Tax: | $142.50 | 6.0000% |

- o **Conditioning Notes**
  - **INTERIOR**
    - ° **Seats**: Sun or weather damage.
    - ° **Carpets**: Sun or weather damage.
  - **EXTERIOR**
    - ° **Body**: Substantial areas rusted through.
    - ° **Paint**: Extensive chipping.
    - ° **Ext Trim**: Scrapes or peeling paint on chrome and bumper covers.

---

## Vehicle Description

# VIN: 1GNET16S456146585

*2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon*

**238,151 Miles Actual**

*6cyl Gasoline 4.2*
*4 Speed Automatic*



| | | | |
|---|---|---|---|
| Interior | *Dual Air Conditioning* | *Cruise Control* | *Center Console* |
| | *Bucket Seats* | *Garage Door Opener* | *Intermittent Wipers* |
| | *Lighted Entry System* | *Overhead Console* | *Power Door Locks* |
| | *Power Windows* | *Rear Heater* | *7 Passenger Seating* |
| | *Velour/Cloth Seats* | *Tachometer* | *Third Seat (trucks)* |
| | *Tilt Steering Wheel* | | |
| | | | |
| Exterior | *Privacy Glass* | *Roof/Luggage Rack* | *Rear Window Wiper/Washer* |
| | *Tinted Glass* | *Tow Hooks* | *Trailer Hitch* |
| | *Aluminum/Alloy Wheels* | | |
| | | | |
| Mechanical | *Auto Locking Hubs (4WD)* | *Power Brakes* | *Power Steering* |
| | *Camper/Towing Package* | *Electronic Transfer Case* | |
| | | | |
| Safety | *Dual Airbags* | *Anti-Lock Brakes* | *Daytime Running Lights* |
| | *Fog Lights* | | |
| | | | |
| Entertainment | *AM/FM CD Player* | | |
| | | | |
| Packages | *Preferred Equipment Pkg., Alarm System, Bodyside Moldings, Rear Window Defroster, Heated Power Mirrors, Floor Mats, Keyless Entry System, Roof Rack Cross Bars* | | |
| | | | |
| Trim Levels | *LS, LT | | * Indicates your trim level |

A detailed description of your vehicle was provided to Autosource by a trained appraiser. Through a partnership with Chevrolet, Audatex AudaVIN retrieves the individual vehicle specifications to identify the vehicle specifications including equipment, packages, engine and transmission. Contact State Farm Insurance if revisions are necessary. The bold/italic font indicates options reported by the manufacturer.

---

## Vehicle Condition

| | |
|---|---|
| **Seats** | Moderate Wear. Sun Or Weather Damage. |
| **Carpets** | Moderate Wear. Sun Or Weather Damage. |
| **Int Trim** | Moderate Damage |
| **Glass** | Good |
| **Headliner** | Good |
| **Body** | Serious Damage. Substantial Areas Rusted Through. |
| **Paint** | Moderate Damage. Extensive Chipping. |
| **Ext Trim** | Moderate Damage. Scrapes Or Peeling Paint On Chrome And Bumper Covers. |
| **Engine** | Minor Work |
| **Transmission** | Minor Work |
| **Front Tires** | Good |
| **Rear Tires** | Good |

---

**Market Overview**



### ⓘ What is my Vehicle Market Value based on?

**48911-6761, Lansing Michigan**--Research for your vehicle was based on market analysis originating from your zip/postal code.

Fair and accurate market valuations must balance geographic location with comparability of one vehicle to others. Having the largest and most current database of vehicles for sale provides a comprehensive view of your vehicle's market. In addition to the vehicle inventories received directly from dealerships, Autosource finds comparable vehicle information for vehicles in the same places most buyers look for them--local and national internet websites, vehicle guides, publications and partnerships representing more than 10,000 independent vehicle sources.

### ⓘ How did Autosource make adjustments for my vehicle?

The main factors that affect the retail selling price and marketability of a vehicle are **odometer, equipment and condition**. Therefore, Autosource valuations include adjustments that fairly consider the differences between your vehicle and the typical vehicle found in the market.

- **Odometer**
  - Adjustments are made to account for the odometer differences between the loss vehicle and comparable(s).
  - The odometer adjustment is based on 0.75 cents per mile specific to the 2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon in the state of Michigan. Odometer adjustments are capped at 40% of the vehicle's starting value.
- **Equipment**
  - Adjustments are made to account for the differences in equipment between the loss vehicle and comparable(s).
  - Equipment adjustments are based on the manufacturer's retail price, adjusted for depreciation
- **Condition**
  - Typical condition is based on hundreds of inspected vehicles
  - Condition adjustments are based on a percentage of the vehicle's value

---

**Comparable Vehicle Details**

The following information provides the details for the vehicles used to calculate the Autosource Value. The selling price may be substantially less than the asking price. Where indicated, the asking price has been adjusted to account for typical negotiation according to each comparables price.

---

| 1 | 2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon | 1GNET16S956198147 | $3,596 |
|---|---|---|---|

Stock# 10635. 206207 Miles. 6 Cylinder 4.2 Engine, 4 Speed Automatic, Anti-Lock Brakes, Auto Locking Hubs (4WD), Aluminum/Alloy Wheels, Bucket Seats, Cruise Control, AM/FM CD Player, Center Console, Dual Airbags, Dual Air Conditioning, Daytime Running Lights, Electronic Transfer Case, Fog Lights, Garage Door Opener, Intermittent Wipers, Lighted Entry System, Overhead Console, OnStar System, 7 Passenger Seating, Power Brakes, Power Door Locks, Privacy Glass, Power Steering, Power Windows, Roof/Luggage Rack, Rear Heater, Rear Window Wiper/Washer, Tachometer, Third Seat (trucks), Tinted Glass, Camper/Towing Package, Trailer Hitch, Tilt Steering Wheel, Velour/Cloth Seats, Emergency Communication System, Front Bucket Seats, Center Armrest, RADIO DATA SYSTEM, Smooth Ride Suspension.

Offered for sale by Newcomb's Auto Sales in Pontiac, MI, (248) 373-1422. Vehicle information by Vast on 12/28/20.

The advertised price of $3,996 was adjusted to account for typical negotiation.

---

| 2 | 2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon | 1GNET16S056118279 | $4,397 |
|---|---|---|---|

Stock# 15397A. 127677 Miles. 6 Cylinder 4.2 Engine, 4 Speed Automatic, Preferred Equipment Pkg., Anti-Lock Brakes, Auto Locking Hubs (4WD), Alarm System, Aluminum/Alloy Wheels, Bodyside Moldings, Bucket Seats, Cruise Control, AM/FM CD Player, Center Console, Dual Airbags, Dual Air Conditioning, Rear Window Defroster, Heated Power Mirrors, Daytime Running Lights, Power Drivers Seat, Electronic Transfer Case, Floor Mats, Fog Lights, Garage Door Opener, Intermittent Wipers, Keyless Entry System, Locking Differential, Lighted Entry System, MP3 Decoder, Overhead Console, OnStar System, 7 Passenger

Seating, Power Brakes, Power Door Locks, Privacy Glass, Power Steering, Power Windows, Roof/Luggage Rack, Roof Rack Cross Bars, Rear Entertainment Systm, Rear Heater, Rear Window Wiper/Washer, Tachometer, Third Seat (trucks), Tinted Glass, Tow Hooks, Camper/Towing Package, Trailer Hitch, Tilt Steering Wheel, Velour/Cloth Seats, Luggage, Communication System, Smooth Ride Suspension.

Offered for sale by Kerns Ford Lincoln Truck Cente in Celina, OH, (567) 510-0557. Vehicle information by *Leading Internet Auto Site on 12/15/20.

The advertised price of $4,886 was adjusted to account for typical negotiation.

| 3 | 2005 Chevrolet Trailblazer EXT LT 4WD 4D Wagon | 1GNET16S556124840 | $3,215 |
|---|---|---|---|

Stock# B6995. 182000 Miles. 6 Cylinder 4.2 Engine, 4 Speed Automatic, LT Package, Anti-Lock Brakes, Auto Locking Hubs (4WD), Alarm System, Aluminum/Alloy Wheels, Bucket Seats, AM/FM CD Player, Center Console, Dual Airbags, Dual Air Conditioning, Rear Window Defroster, Heated Power Mirrors, Power Drivers Seat, Electronic Transfer Case, Floor Mats, Fog Lights, Garage Door Opener, Intermittent Wipers, Keyless Entry System, Lighted Entry System, Overhead Console, 7 Passenger Seating, Power Brakes, Power Door Locks, Power Quarter Windows, Privacy Glass, Power Steering, Power Windows, Roof/Luggage Rack, Rear Heater, Rear Window Wiper/Washer, Tachometer, Third Seat (trucks), Tinted Glass, Camper/Towing Package, Trailer Hitch, Tilt Steering Wheel, Velour/Cloth Seats.

Offered for sale by Dealer in Battle Creek, MI, (269) 883-6205. Vehicle information by Vast on 12/21/20.

The advertised price of $4,000 was adjusted to account for differences in vehicle description ($ -385) and typical negotiation.

| 4 | 2005 Chevrolet Trailblazer EXT LT 4WD 4D Wagon | 1GNET16S956205484 | $4,347 |
|---|---|---|---|

Stock# 56205484. 148118 Miles. 6 Cylinder 4.2 Engine, 4 Speed Automatic, LT Package, Preferred Equipment Pkg., Anti-Lock Brakes, Automatic Dimming Mirror, Auto Locking Hubs (4WD), Alarm System, Aluminum/Alloy Wheels, Bose Sound System, Bucket Seats, Cruise Control, Compact Disc W/Tape, Center Console, Dual Airbags, Dual Air Conditioning, Rear Window Defroster, Heated Power Mirrors, Driver Information Sys, Dual Zone Auto A/C, Dual Power Seats, Electronic Transfer Case, Floor Mats, Fog Lights, Garage Door Opener, Heated Front Seats, Intermittent Wipers, Keyless Entry System, Lighted Entry System, Leather Steering Wheel, Leather Seats, Navigation System, Overhead Console, OnStar System, 7 Passenger Seating, Power Brakes, Power Door Locks, Power Quarter Windows, Privacy Glass, Power Steering, Power Windows, Power Adjustable Pedals, Roof/Luggage Rack, Rear Entertainment Systm, Rear Heater, Rear Seat Audio Controls, Rain-Sensing W/S Wipers, Rear Window Wiper/Washer, Strg Wheel Radio Control, Tachometer, Third Seat (trucks), Tinted Glass, Camper/Towing Package, Trailer Hitch, Tilt Steering Wheel, 17 Inch Wheels And Tires, Emergency Communication System, Entertainment Package, Floor Mats, Front Bucket Seats, Center Armrest, Leather Trimmed Interior, Luxury Package, Preferred Equipment Package, RADIO DATA SYSTEM, Rear Power Windows, Smooth Ride Suspension.

Offered for sale by Elhart Automotive Campus in Holland, MI, (616) 392-8516. Vehicle information by Cars.com on 11/16/20.

The advertised price of $5,200 was adjusted to account for differences in vehicle description ($ -385) and typical negotiation.

---

## Administrative Data

| Jeff GT1X | Claimant | |
| State Farm Insurance | Insured | Jaegers, Jennifer |
| STATE FARM GREAT LAKES 9 Branch | Claim | 22-15C7-45P01 |
| | Loss Date | 01/01/2021 |
| Tempe AZ 85282 | Loss Type | Collision |
| | Policy | |
| | Other | |
| | License Expiration | 2021-01 |

---

## VINSOURCE Analysis

| VIN | 1GNET16S456146585 |
|---|---|
| Decodes as | 2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon |
| Accuracy | Decodes Correctly |
| History | No activity was reported |

Report Date 01/06/21                                                    2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon

AudaVIN  Yes

---

## Reported Phone Number Analysis

No Vehicles Advertised at (517) 619-8172

---

## NICB Report

NICB/ISO  B027 BALBOA INSURANCE COMPANY
Member
    Claim  6723600145                          Loss Date  03/05/07
Type of Loss  PROPERTY/CASUALTY                    Phone  8009980641

NICB/ISO  S037 STATE FARM MUTUAL AUTOMOBILE INSURANCE
Member  COMPANY
    Claim  2215C745P                            Loss Date  01/01/21
Type of Loss  PROPERTY/CASUALTY                    Phone

---

## Recall Bulletins

No recall bulletins have been issued that apply to this vehicle

---

## Original Equipment Guide

| Engine Options | | | Transmission Options | |
| --- | --- | --- | --- | --- |
| * 6 Cylinder 4.2 Engine | STD | | * 4 Speed Automatic | STD |
| 8 Cylinder 5.3 Engine | $1,500 | | | |

| Other Optional Equipment | | | Convenience Options | |
| --- | --- | --- | --- | --- |
| * Anti-Lock Brakes | STD | | Automatic Dimming Mirror | $175 |
| * Auto Locking Hubs (4WD) | STD | | * Cruise Control | $275 |
| * Bodyside Moldings | TYP | | * Dual Air Conditioning | STD |
| * Center Console | STD | | * Rear Window Defroster | TYP |
| * Dual Airbags | STD | | * Daytime Running Lights | STD |
| * Fog Lights | STD | | * Electronic Transfer Case | STD |
| Head Airbags | $495 | | Floor Mats | TYP |
| * Intermittent Wipers | STD | | Garage Door Opener | STD |
| * Keyless Entry System | TYP | | * Tilt Steering Wheel | STD |
| Locking Differential | $270 | | | |

| | | | Power Accessories | |
| --- | --- | --- | --- | --- |
| * Lighted Entry System | STD | | * Heated Power Mirrors | TYP |
| * Overhead Console | STD | | Power Drivers Seat | $300 |
| OnStar System | $695 | | * Power Brakes | STD |
| * Privacy Glass | STD | | * Power Door Locks | STD |
| * Roof/Luggage Rack | STD | | Power Quarter Windows | $130 |
| * Roof Rack Cross Bars | $45 | | * Power Steering | STD |
| Rear Entertainment Systm | $1,295 | | * Power Windows | STD |

| | | | Radio/Phone/Alarm Options | |
| --- | --- | --- | --- | --- |
| * Rear Heater | STD | | Alarm System | TYP |
| * Rear Window Wiper/Washer | STD | | Bose Sound System | $495 |
| Skid Plates | $130 | | * AM/FM CD Player | STD |
| Side Steps | $375 | | | |

---

Claim 22-15C7-45P01                          Request 55363036                                          Page 7

| | | | | | |
|---|---|---|---|---|---|
| * | Tachometer | STD | | Compact Disc W/Tape | $150 |
| * | Tinted Glass | STD | | AM/FM In-dash CD Changer | $395 |
| * | Tow Hooks | $40 | | MP3 Decoder | $135 |
| * | Camper/Towing Package | STD | | XM Satellite Radio | $325 |
| * | Trailer Hitch | STD | | | |

| **Roof Options** | | **Seat Options** | | |
|---|---|---|---|---|
| Power Moonroof | $950 | * | Bucket Seats | STD |
| | | * | 7 Passenger Seating | STD |
| **Wheel Options** | | * | Third Seat (trucks) | STD |
| * Aluminum/Alloy Wheels | STD | * | Velour/Cloth Seats | STD |

| **Option Packages** | | |
|---|---|---|
| * Preferred Equipment Pkg. | $1,075 | Includes Alarm System, Bodyside Moldings, Rear Window Defroster, Heated Power Mirrors, Floor Mats, Keyless Entry System, Roof Rack Cross Bars |

| | |
|---|---|
| Base retail price | $32,950 |
| **Loss Vehicle manufacturer's suggested retail price as reported** | **$34,340** |

Editions available for the same body style (in order of original cost, increasing): *LS, LT

* Indicates loss vehicle equipment.

---

**About Your Valuation**

This report contains proprietary information of Audatex and its partners and shall not be disclosed to any third party (other than the insurer or insured, or their legal representative; or claimant or claimant's insurer for purposes of subrogation) without Audatex's prior written consent. If you are the insured or claimant and have questions regarding the description of your vehicle, please contact the insurance company that is handling your claim. Information within VINsource/NICB is provided solely to identify potential duplicative claims activity. User agrees to use such information solely for lawful purposes.

Tax rates contained herein are based on general sales tax data provided by Vertex Inc. Excise, use, registration, licensing and other taxes and fees that may be applicable are not included. Audatex makes no representations or warranties concerning the applicability or accuracy of such tax data.

Report Generated by Audatex, a Solera Company

US Pat. No 7912740B2

US Pat. No 8200513B2

US Pat. No 8468038B2

US Pat. No 8725544

© 2021 Audatex North America, Inc. All Rights Reserved.



# EXHIBIT B

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*

 **StateFarm®**

January 6, 2021

Jennifer C Jaegers
900 Long Blvd Apt 584
Lansing MI 48911-6761

**State Farm Claims**
PO Box 52250
Phoenix AZ 85072-2250

RE:    Claim Number:     22-15C7-45P
       Date of Loss:     January 1, 2021
       Vehicle:          2005 Chevrolet TRAILBLAZER EXT
       VIN:              1GNET16S456146585
       Mileage:          238151 (observed at the time of inspection)

Dear Jennifer C Jaegers:

Your policy provides for payment of the actual cash value of your vehicle, less any applicable deductible for your total loss. Actual cash value is generally determined by the age, condition, equipment and mileage of your vehicle at the time the loss occurred.

To assist us in determining actual cash value, we consider information obtained by our representatives, information provided by you, vehicle valuation services, and other sources. If you have additional information you wish us to consider, or if you believe we have not correctly determined the actual cash value of your vehicle, please contact us.

The amount payable to you was determined as follows:

| | |
|---|---|
| Actual Cash Value | $2,375.00 |
| Plus: Taxes | $142.50 |
| Title Transfer: | $23.00 |
| | |
| Subtotal | $2,540.50 |
| Less: Deductible | $500 |
| Payment to Lien/Lease holder (if applicable) | $0.00 |
| Total Net Payable to You | $2,040.50 |

Thank you for choosing State Farm® for your insurance needs.

If you have questions or need assistance, call us at (855) 231-1590 Ext. 711.

22-15C7-45P
Page 2
January 6, 2021

Sincerely,

Elijah Buck
Claim Associate
(855) 231-1590 Ext. 711

State Farm Mutual Automobile Insurance Company

Enclosure(s):  Settlement Documents
               Return Shipping Label

---

Take advantage of our self-service options
Go to statefarm.com® to easily review claim status, select a repair facility, reserve a rental vehicle, update direct deposit account information for claim payments and many other insurance and banking services.

# Insurance Company Detail

**Detailed information for: STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**

**System ID: 0000531**

1 State Farm Plz

Bloomington, IL 61710-0001

**Entity Type:** Property and Casualty Insurer

**NAIC Number:** 25178

**Ownership Type:** Mutual

**State of Domicile:** IL

**Phone Number:** 309-766-2311

\* The number listed is the statutory home office number and not a number consumers should call to obtain insurance quotes.

**Toll Free Number:** 888-690-2882

**Service of Process:**

Resident Agent

Corporation Service Company

2900 West Road, Suite 500

East Lansing, MI 48823

888-690-2882

\* Michigan Resident Agent - For the sole purpose of accepting legal papers for lawsuits.

## Licensing Information

(for agent appointments, cancellations, and renewal purposes)

**Address:**

Agency/Sales Resources - CityLine Building 4

1415 State Street, 16th Floor

Richardson, TX 75082

**Phone:**

972-362-3332

## Individuals Appointed by this Entity

## Agencies Appointed by this Entity

# Exhibit C

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| JENNIFER JAEGERS SCHMIDT, on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br><br>   v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.,<br><br>       Defendant. | Case No.: |

## DECLARATION OF MAUREEN HASSELMANN IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL

I, Maureen Hasselmann, state and declare as follows:

1.  I am over twenty-one years of age, of sound mind, and competent to testify. Unless otherwise stated, I have personal knowledge of the facts stated in this declaration. If called as a witness, I could testify as to each of them.

2.  I am currently employed as a Claim Consultant by State Farm Mutual Automobile Insurance Company ("State Farm") in Bloomington, Illinois. I am authorized to make this declaration on behalf of State Farm.

3.  State Farm is an insurance company organized under the laws of the State of Illinois with its principal place of business in Illinois.

4.     I understand that Plaintiff seeks certification of the following putative class:

> All State Farm Indemnity Company insureds, from the earliest allowable time through the date of resolution of this action, who were or are Michigan residents who received a first-party total-loss valuation and payment on an automobile total-loss claim that included a "typical negotiation" or similar adjustment.

5.     I also understand that Plaintiff has alleged that State Farm, through its use of Autosource valuation reports, "systemically fails to pay its insureds the [actual cash value] of their total-loss vehicles by applying an improper and unreasonable Typical Negotiation Adjustments ... to the value of the vehicle."

6.     I further understand that State Farm asked Audatex, the third-party that generates the Autosource valuation reports, to conduct a preliminary search of claims data to identify State Farm valuations in the State of Michigan that took typical negotiation adjustments to comparable vehicles. No claims data from Audatex is available from before 2018 due to an anonymization protocol, so the data are likely under-inclusive. The Audatex claims data also include valuations for all State Farm entities, not just State Farm Mutual Automobile Insurance Company, so the data also are likely over-inclusive.

7.      According to that Audatex claims data, I understand there are thousands of claims that are likely to fall within Plaintiff's putative class definition. That Audatex claims data also show the total amount of typical negotiation adjustments applied to those claims is well in excess of $5,000,000.

I declare under penalty of perjury and under the laws of the United States, 28 U.S.C. § 1746, that the foregoing statements are true and correct.

Signed this 1st day of December 2022.

Maureen Hasselmann

# Exhibit D

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JENNIFER JAEGERS SCHMIDT, individually and on behalf of others similarly situated, | |
| Plaintiff, | |
| v. | Case No.: |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., | |
| Defendant. | |

## VERIFICATION OF STATE COURT RECORDS

Defendant State Farm Mutual Automobile Insurance Co. ("State Farm"), by and through its undersigned counsel of record, hereby certifies that true and correct copies of all records and proceedings from the state court action, *Schmidt v. State Farm Mutual Automobile Insurance Co.*, Wayne County Circuit Court Case No. 22-013100-CK, as they existed on December 2, 2022, are attached as **Exhibit 1**.

39966445.1/150450.00282

Dated: December 2, 2022          Respectfully submitted,

*s/ Jeffrey A. Crapko*
Jeffrey A. Crapko (P78487)
Nashara A.L. Peart (P83078)
Miller, Canfield, Paddock & Stone, P.L.C.
150 West Jefferson, Suite 2500
Detroit, MI 48226
Phone:  248.267.3237
Fax:      313.496.7500
Email:  crapko@millercanfield.com
Email:  peart@millercanfield.com

Peter W. Herzog III (admitted to EDMI)
Wheeler Trigg O'Donnell LLP
211 N. Broadway, Suite 2825
St. Louis, MO 63102
Phone: 314.326.4128
Fax:      303.244.1879
Email:  pherzog@wtotrial.com

Eric L. Robertson (admitted to EDMI)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Phone: 303.244.1800
Fax:      303.244.1879
Email:  robertson@wtotrial.com

*Attorneys for State Farm Mutual*
*Automobile Insurance Co.*

2

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I certify that on December 2, 2022, I electronically filed the foregoing

with the Clerk of Court using the ECF system which will send notification of

such filing to the ECF participants.


Dated: December 2, 2022 <u>*s/ Jeffrey A. Crapko*</u>

# Exhibit 1

22-013100-CK FILED IN MY OFFICE   WAYNE COUNTY CLERK   11/2/2022 11:43 AM   Cathy M. Garrett   Tamika Wright-Evans

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY | JURY DEMAND | CASE NO.<br>22-CK-_____ |
|---|---|---|

**Court address**                                                                 Court telephone no.
Wayne County Circuit Court, 3rd Judicial Circuit, 2 Woodward Avenue, Detroit, MI 48226   313-224-0157

| Plaintiff(s) name(s)<br>Jennifer Jaegers Schmidt | v | Defendant(s) name(s)<br>STATE FARM MUTUAL AUTOMOBILE INS. CO. |
|---|---|---|
| Plaintiff's address and telephone no. or attorney name, bar no., address, and telephone no.<br>Andrew J. McGuinness (P42074)<br>ANDREW J. MCGUINNESS, ESQ.<br>P O Box 7711<br>Ann Arbor, MI  48107 | | Defendant's address and telephone no. or attorney name, bar no., address, and telephone no. |

☐ Probate     In the matter of _____

☐ Juvenile     In the matter of _____

1. I demand a jury trial.

11-2-2022
_____
Date

/s/ Andrew J. McGuinness
_____
Signature

Approved, SCAO
Form MC 22, Rev. 4/19
MCL 600.857(3), MCL 600.2529(1)(c),
MCR 2.508, MCR 2.509, MCR 3.911

Form Distribution:
Original - Court
1st copy - Plaintiff/Petitioner
2nd copy - Defendant/Respondent

Approved, SCAO

| | | Original - Court<br>1st Copy - Defendant | 2nd Copy - Plaintiff<br>3rd Copy - Return |
|---|---|---|---|

| **STATE OF MICHIGAN**<br>**THIRD JUDICIAL CIRCUIT**<br>**WAYNE COUNTY** | **SUMMONS** | **CASE NO.**<br>22-013100-CK<br>Hon.Sheila Ann Gibson |
|---|---|---|

Court address : 2 Woodward Ave., Detroit MI 48226                         Court telephone no.: 313-224-5207

| Plaintiff's name(s), address(es), and telephone no(s)<br><br>Schmidt, Jennifer Jaegers | v | Defendant's name(s), address(es), and telephone no(s)<br>STATE FARM MUTUAL AUTOMOBILE INSURANCE<br>COMPANY |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no<br><br>Andrew J. McGuinness 42074<br>P O # 7711<br>Ann Arbor, MI 48107 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court,

where it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.        | **SUMMONS** |

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. YOU HAVE 21 DAYS after receiving this summons and a copy of the complaint to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>11/2/2022 | Expiration date*<br>2/1/2023 | Court clerk<br>Tamika Wright-Evans |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (9/19)        SUMMONS        MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

John Flanagan    11/15/2022 8:11 AM    WAYNE COUNTY CLERK    Cathy M. Garrett    IN MY OFFICE    22-013100-CK FILED

| | SUMMONS |
|---|---|
| | Case No.: 22-013100-CK |

## PROOF OF SERVICE

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ **OFFICER CERTIFICATE** | **OR** | ☑ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that: (notarization required) |

☑ I served personally a copy of the summons and complaint.

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____
List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service #500 | Day, date, time |
|---|---|---|
| State Farm Mutual Automobile Insurance Company | 2910 West Rd #500 East Lansing MI 48823 | Fri 11-4-22 11:10AM |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled $ | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled $ | Fee $ | Total fee $ | Name (type or print) Matthew B Jenkins |

Title _Process Server_

Subscribed and sworn to before me on _11-4-22_, _Ingham_ County, Michigan.
Date

My commission expires: _5-18-29_ Signature: _____
Date Deputy court clerk/Notary public

Notary public, State of Michigan, County of _Ingham_

TIFFANY BALE
NOTARY PUBLIC-STATE OF MICHIGAN
INGHAM COUNTY
MY COMMISSION EXPIRES MAY. 18, 2029
Acting in the County of _Ingham_

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____ Attachments

_____ on _____
Day, date, time

_____ on behalf of _____
Signature

Approved, SCAO

| | | |
|---|---|---|
| Original - Court | 2nd copy - Plaintiff | |
| 1st Copy- Defendant | 3rd Copy -Return | |

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS | CASE NO.<br>22-013100-CK<br>Hon.Sheila Ann Gibson |
|---|---|---|

Court address : 2 Woodward Ave., Detroit MI 48226        Court telephone no.: 313-224-5207

| Plaintiff's name(s), address(es), and telephone no(s)<br>Schmidt, Jennifer Jaegers | v | Defendant's name(s), address(es), and telephone no(s).<br>STATE FARM MUTUAL AUTOMOBILE INSURANCE<br>COMPANY |
|---|---|---|
| **Plaintiff's attorney, bar no., address, and telephone no**<br><br>Andrew J. McGuinness 42074<br>P O # 7711<br>Ann Arbor, MI 48107 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court,

where it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.      | **SUMMONS** |

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>11/2/2022 | Expiration date*<br>2/1/2023 | Court clerk<br>Tamika Wright-Evans |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01 (9/19)**      **SUMMONS**      MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105



STATE OF MICHIGAN
THIRD JUDICIAL CIRCUIT
WAYNE COUNTY

| | |
|---|---|
| Jennifer Jaegers Schmidt, individually and on behalf of others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>      Defendant. | Civil Case No.: 22-CK-_____<br><br>CLASS ACTION<br><br>JURY DEMAND<br>(MCR 2.508(b)) |

Andrew J. McGuinness (P42074)
ANDREW J. McGUINNESS, ESQ.
P O Box 7711
Ann Arbor, MI 48107
(734) 274-09374
drewmcg@topclasslaw.com
_____/

There is no other pending or resolved civil action arising out
of the transaction or occurrence alleged in this Complaint, nor
has any such action previously been filed and dismissed after
having been assigned to a judge.

## **CLASS ACTION COMPLAINT**

Plaintiff Jennifer Jaegers Schmidt ("Plaintiff"), individually and on behalf of others similarly situated, brings this suit as a class actual pursuant to Michigan Court Rule 3.501 against Defendant State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm"), and further states as follows:

## INTRODUCTION

1.      This is a Class Action lawsuit by Plaintiff, who was the named insured under an automobile insurance policy issued by State Farm for private passenger auto physical damage including comprehensive and collision coverage (the "Policy"), pursuant to which Defendant was required to pay the cost to repair an insured vehicle up to the "Actual Cash Value" ("ACV") of the insured vehicle. A copy of the Policy is in the possession of the Defendant.

2.      Insureds, such as Plaintiff and the putative class members, pay a premium in exchange for State Farm's promise to repair any damage to an insured vehicle caused by a covered peril. However, State Farm's obligation to repair any damage is not limitless; rather, it is limited (or capped) to the ACV of the insured vehicle. For example, State Farm is not obligated to spend $20,000 to repair extensive damage to a vehicle that is only worth $5,000. Under circumstances where the cost to repair damage exceeds the value of the vehicle (less retained value), the vehicle is considered a "total loss." If a total loss occurs, State Farm's contractual obligation is limited to paying the ACV of the total-loss vehicle.

3.      The goal of ACV in insurance contracts is that of indemnity. By promising to pay the cost to repair the vehicle limited at ACV in the event of a total loss, Defendant promises to put its insureds back to their pre-loss position. In Michigan, ACV has been judicially defined as replacement cost minus depreciation.

4.      State Farm's contractual obligation to pay ACV must be construed as consistent with applicable Michigan law, which provides that State Farm must make ACV valuations on the basis of replacement cost minus normal depreciation.

1

5.     When determining the ACV of a total loss vehicle, it is improper for an automobile insurance company, such as State Farm, to undervalue and underpay the claims by manipulating the data used to value the vehicles.

6.     State Farm is required under its Policies and Michigan law to proffer a cash settlement on the basis of replacement cost minus depreciation, and is not entitled to make unsupported, arbitrary reductions to reduce claims payments to insureds.

7.     Notwithstanding its obligations, State Farm systemically fails to pay its insureds the ACV of their total-loss vehicles by applying an improper and unreasonable Typical Negotiation Adjustments ("Negotiation Reduction") to the value of the vehicle. This reduction is contrary to appraisal standards and methodologies, is not based in fact, is contrary to the used-car industry's pricing and inventory management practices, and is applied by Defendant solely as a basis to reduce the amount paid to its insureds after a total loss.

8.     The across-the-board Negotiation Reduction does not reflect reality. Indeed, Defendant applies the "typical negotiation" adjustment without contacting the identified dealerships or sellers, or considering whether the online retailer ever discounts its vehicles. Notably, in applying a universal percentage-based "typical negotiation" adjustment reduction, Defendant failed to consider that it is increasingly the dominant practice in the used car market to avoid price negotiation by implementing "no haggle" pricing, particularly as to internet-posted prices. Particularly during the COVID-19 pandemic, and the related supply chain problems with parts such as electronics for vehicles, used cars have been selling for a premium, with sale price frequently exceeding the posted price.

9.     Regardless, State Farm applied a Negotiation Reduction of approximately 10% for all comparable vehicles listed in Plaintiff's valuation report despite that the vehicle prices were

2

pulled from multiple different dealerships. (Exhibit A ("Valuation Report") at pp. 5-6). There was deducted an identical 10% downward reduction to each of the base values of the four comparable vehicles, which were then used to derive the value of Plaintiff's total loss vehicle, resulting in a 10% deduction in Plaintiff's vehicle value and Plaintiff's ultimate insurance payout. *Id*.

10.     The reduction described in the preceding paragraph was wholly arbitrary and not based on any statistical, objective, or verifiable data.

11.     Moreover, to arrive at the 10% Negotiation Adjustment, State Farm categorically excluded transactions that undermine its flawed thesis: for example, transactions where the sold price exceeds the list price and every transaction where the sold price equaled the advertised price, allowing Defendant to thumb the scale in its favor. This practice ignores current market realities in which dealerships often charge more than advertised price to customers.

12.     The Negotiation Reduction is not documented nor justified in detail. The basis for the settlement offer with the 10% reduction and how it was derived was never explained to the Plaintiff. The only purported explanation for the reduction in the offer is found in Plaintiff's multi-page valuation report is a general, nondescript statement buried deep in the document. (*See* Exhibit A at pp. 5-6) (providing: "[t]he advertised price of [each comparable vehicle advertised price] was adjusted to account for typical negotiation"). No other explanation was provided by State Farm to justify the Negotiation Reduction.

13.     The Negotiation Reduction was applied on each of the comparable vehicles on top of adjustments for differences such as mileage, options, and equipment. The deduction is neither specific nor appropriate as to dollar amount, and no explanation is provided as to the evidentiary basis for the 10% across-the-board reduction.

3

14.     State Farm is engaged in a pattern and practice of deliberately undervaluing comparable and total loss vehicles when paying first-party automobile total loss claims, which results in State Farm underpaying insureds for the ACV of their total-loss vehicles in breach of the clear terms of State Farm's insurance policies.

15.     Plaintiff and the putative class members lived up to their end of the bargain by paying the premiums owed and abiding by all contractual requirements.

16.     State Farm did not live up to its obligations under the subject policies. Rather, State Farm reduced the ACV value of total-loss vehicles through use of the arbitrary and unsupported Negotiation Reduction.

17.     On information and belief, Defendant's standardized policy language as to coverage for the ACV of total-loss vehicles is present in every auto policy issued by Defendant in Michigan.

18.     State Farm's failure to pay the full and complete ACV of insured vehicles on first-party claims constitutes a material and bad faith breach of contract as to Plaintiff and every member of the putative class defined herein.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to Mich. Comp. Laws §§ 600.601, 600.605, because the amount in controversy exceeds $25,000.

20.     At all relevant times, Plaintiff and putative class members were Michigan policyholders and citizens.

21.     The defendant is a citizen of Illinois because it is incorporated in the State of Illinois and keeps its principal place of business in Bloomington, Illinois.

4

22.    Venue in this Court is proper because Defendant State Farm conducts business in Wayne County, Michigan.

## NATURE OF THE CASE

23.    Defendant is an automobile insurer in Michigan and provides, *inter alia*, coverage for first-party property damage under collision and/or comprehensive coverage. Such policies, issued to Plaintiff and all putative class members, are form policies that promise to pay for loss up to a limit on liability of ACV.

24.    Most car accidents are "partial" losses, which is the term used where insurers (including Defendant) pay to repair the damage to a vehicle. Where repair of the vehicle is impossible or uneconomical, however, the loss is considered a "total loss." When Defendant determines that a vehicle is a total loss it elects to pay the vehicle's ACV.

25.    Pursuant to the basic tenets of insurance law, once Defendant elects to pay ACV, it is bound by that election and cannot thereafter change its mind and decide later to pay the cost to repair the vehicle. *See* 12A Couch on Ins. § 176.23. Put differently, when Defendant declares a vehicle a total loss and voluntarily invokes its limitation of liability, it is obligated under its insurance Policy to pay the ACV of the vehicle to the insured.

26.    Under Defendant's Policy with Plaintiff (and and its similar policies with putative class members), in the event of a total loss it must pay the ACV of the covered vehicle. The Policy does not define ACV.

27.    Total loss scenarios are taxing to the insured. Not only has the insured likely suffered more than a minor accident – and thus often dealing with potential medical injuries – there are numerous insurance-related issues, such as payment for storage, investigation of the vehicle and claim, finding a replacement vehicle, and so forth.

5

28.     The Michigan Supreme Court has interpreted undefined ACV to mean replacement cost less depreciation. *Smith v. Michigan Basic Property Ins. Ass'n*, 441 Mich. 181 (1992). Replacement cost means a reasonable estimate of the cost of replacing on the market an item of personal property. *Id.*

29.     Defendant fails entirely to abide by its contractual requirements by failing to pay its insureds the ACV of their vehicles.

30.     Defendant purports to calculate the ACV of total-loss vehicles via a third-party vendor, Audatex or AudaExplore, through a system called Autosource Market-Driven Valuation ("Autosource"). Ostensibly, the Autosource system identifies the list price of comparable vehicles, which it then adjusts based on factors such as differences in equipment, packages, and/or condition between the comparable vehicle and the total-loss vehicle.

31.     However, in violation of Michigan law and its policy promise to pay ACV, Defendant incorporates unfounded Negotiation Reductions into its Autosource calculations.

32.     Defendant represents that the Negotiation Reduction reflects some sort of average difference between list price and "what the dealer would be willing" to sell it for. But Defendant does not actually base the Negotiation Reduction on conversations with the sellers of the comparable vehicles or even statistically valid data or calculations. Indeed, the 10% reduction applied to Plaintiff's vehicle is not supported by a comparison of list versus sold vehicles prices within the State of Michigan.

33.     Upon information and belief, State Farm's 10% Negotiation Reduction is arbitrary, not based on valid data, and is nothing more than another illegitimate and capricious way to undervalue the total-loss vehicles.

34.     Upon information and belief, Defendant instructs Autosource to apply the Negotiation Reduction. Other insurers who use the Autosource system do not instruct Autosource to apply the Negotiation Reduction to the price of comparable vehicles.

## PLAINTIFF'S ACCIDENT AND VALUATION

35.     At all times relevant, Plaintiff was insured under a policy of insurance issued by Defendant for a 2005 Chevrolet Trailblazer.

36.     On or about January 1, 2021, Plaintiff's vehicle sustained damage. After Plaintiff submitted a physical damage claim, Defendant declined to pay to repair the vehicle, determined it was a total-loss, and elected to pay Plaintiff a cash amount for the ACV of the vehicle.

37.     Defendant purportedly determined that the vehicle value was $2,375.00, to which Defendant added sales tax and a title fee and subtracted the deductible for a total of $2,040.50. *See* Exhibit B ("Settlement Letter") at p. 1.

38.     To arrive at this estimated vehicle value, Defendant relied on the Autosource valuation report, which purports to contain the values of comparable vehicles listed for sale (or sometimes recently sold) in Plaintiff's geographic area. The report also contains a purported valuation for Plaintiff's total-loss vehicle, which is based on the advertised prices for the comparable vehicles listed in the report. The report then adjusts the advertised prices of the comparable vehicles to account for differences in equipment, mileage, and vehicle configuration. (Exhibit A).

39.     State Farm then applied the 10% Negotiation Reduction to each comparable vehicle, resulting in an across-the-board deduction in vehicle price for each comparable vehicle, which thereby caused a reduction in the vehicle value of Plaintiff's total-loss vehicle. Defendant

7

provided no data specific to the comparable vehicles or any explanation of industry practices in the valuation report that would support the Negotiation Reduction. (*Id.*).

40.     Plaintiff does not dispute the accuracy of the advertised prices for the comparable vehicles. Plaintiff does not dispute in this Complaint that the comparable vehicles are a fair representation of comparable vehicles in the market area. Plaintiff does not dispute in this Complaint that State Farm can adjust the comparable vehicles based on differences (if any) in equipment, mileage, and vehicle configuration. Plaintiff does not dispute in this Complaint that State Farm accurately identifies differences (if any) in equipment, mileage, and vehicle configuration. And, Plaintiff does not dispute in this Complaint the amount of the adjustments State Farm applied to account for the differences (if any) in equipment, mileage, and vehicle configuration.

41.     Put differently, Plaintiff does not challenge in this Complaint the Autosource methodology except for the application (and the "calculation") of the Negotiation Reduction, which Plaintiff alleges is arbitrary, deceptive, inaccurate, and made in bad faith.

42.     By failing to pay full ACV by virtue of the Negotiation Reduction, Defendant failed to put Plaintiff back to her pre-loss position and thereby breached its insurance policy.

## DEFENDANT'S CONDUCT BREACHES ITS CONTRACTS AND MICHIGAN LAW

43.     Defendant is aware that the Negotiation Reduction applied in the Autosource valuation report results in anti-contractual insufficient claims payments.

44.     The arbitrary and capricious vehicle values provided by Autosource, because of the Negotiation Reductions, are lower than the values of a comparable automobile vehicle and concomitantly lower than the vehicle's replacement cost minus depreciation. Moreover, it is lower

than the vehicle's ACV, as reasonably understood under the Policy and as conformed to Michigan law.

45.    Defendant's failure to properly pay the ACV of an insured's loss constitutes a breach of contract.

46.    Moreover, the aforementioned conduct – and breaches of contract – are the result of actions that constitute bad faith, and are capricious and arbitrary in violation of Defendant's duties and obligations to its insureds.

47.    Defendant's conduct set forth herein and use of the Negotiation Reduction violate Defendant's "duty of good faith and fair dealing" by failing to act fairly and in good faith with its insureds.

48.    Upon information and belief, Defendant intentionally undervalues the total-loss claims through application of the Negotiation Reduction and otherwise violates its duty of good faith and fair dealing and the covenant of good faith applicable under Michigan law.

49.    Defendant's Policy, to the extent inconsistent, must be conformed to comply with Michigan law.

50.    All conditions precedent to the initiation of this suit have been satisfied.

## **CLASS ACTION**

51.    Pursuant to Michigan Court Rule 3.501, Plaintiff seeks to certify and represent the following class (the "Class"):

> All State Farm Indemnity Company insureds, from the earliest allowable time through the date of resolution of this action, who were or are Michigan residents who received a first-party total-loss valuation and payment on an automobile total-loss claim that included a "typical negotiation" or similar adjustment.

9

52.     Excluded from the Class are Defendant and its agents, employees, subsidiaries, parents, and related entities, as well as the Judge assigned to this case and his or her staff employees. Also excluded from the Class are the undersigned counsel and anyone employed in their law firms.

53.     **Numerosity:** On information and belief, State Farm is one of the principal automobile insurers in Michigan, who has issued hundreds of thousands (if not millions) of automobile insurance policies in Michigan with collision coverage over the past six years. Although unable to allege a precise number of Class members absent confirmatory discovery, upon information and belief, including investigation by the undersigned and examination of the premiums written by Defendant over the past ten years, Plaintiff reasonably believes that the number of members of the Class numbers in the thousands, such that members of the Class are so numerous that joinder of all individual claims at issue is impracticable. Thus, the Class are sufficiently numerous within the meaning of Rule 3.501(A)(1)(a).

54.     **Commonality:** This litigation raises common questions of law and fact subject to common resolution within the meaning of Rule 3.501(A)(1)(b), including:

a.  Whether Defendant applied a typical negotiation adjustment for total loss claims for a given time period for automobile policies in Michigan;

b.  whether Defendant's application of a typical negotiation adjustment results in a breach of Defendant's contractual obligation to pay ACV;

c.  whether Defendant's application of a typical negotiation adjustment is a breach of the covenant of good faith and fair dealing;

d.  whether Plaintiff and Class members are entitled to damages and the measure of damages owed.

10

55.   **Typicality:** Plaintiff's claims and the defenses thereto are typical of members of the Class within the meaning of Rule 3.501(A)(1)(c). Defendant injured Plaintiff and members of the Class through uniform misconduct and Plaintiff's legal claims arise from the same core practices. Plaintiff suffered the same harm as all Class members and Plaintiff's interests are identical to those of the other Class Members.

56.   **Adequacy:** Plaintiff will adequately – and zealously – protect the interests of members of the Class. Plaintiff is unaware of any interest in conflict with those of the Class, and Plaintiff and the undersigned have sufficient and adequate resources to prosecute this claim. Plaintiff is sufficiently knowledgeable concerning the subject matter at issue and is committed to protecting putative class members from any unfair or harmful conduct. Moreover, Plaintiff has retained counsel who collectively have successfully litigated hundreds of class actions, including in the insurance context, through settlement and litigated judgments. The undersigned counsel isa member of the bar of this Court who has extensive experience in class litigation and is well-versed in Michigan law and local rules and procedures. Plaintiff has also retained co-counsel who are members in good standing of the bar of the State of Florida, who plan to move for *pro hac vice* admission in due course. As such, the adequacy requirement of Rule 3.501(A)(1)(d) is satisfied.

57.   **Predominance:** The aforementioned common issues of law and fact predominate over any individual issues within the meaning of Rule 3.501(A)(1)(b). Issues of liability are common to the class, and, as such, even if issues of damages are individualized, that would not preclude class treatment. Moreover, while the ***amount*** of damages will vary, the ***measure*** of damages will not.

58.   **Superiority:** Class treatment is superior to any other viable alternative method of adjudication within the meaning of Rule 3.501(A)(1)(e), in that:

a. Neither the size of the Class, nor any other factor, make it likely that difficulties will be encountered in the management of this case as a class action;

b. The prosecution of separate actions by individual Class members, or the individual joinders of all Class members in this action, is impracticable and would create a significant and unnecessary burden on the resources of the courts and could result in inconsistent adjudication, while a single class action can determine, with judicial economy, the rights of each member of the Class;

c. Because of the disparity of resources available to Defendant versus those available to individual members of the Class, prosecution of separate actions would work a financial hardship;

d. The conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each Class member and meets all due process requirements. A class action is also superior to the maintenance of these claims on an individual basis when all actions arise out of the same circumstances and course of conduct; and

e. Because the claims are relatively small compared to the cost, time, and expense of litigation, individual actions will be rendered financially impractical, if not impossible.

59.     Class members can be identified and ascertained through objective criteria within Defendant's own possession.

## <u>COUNT I: BREACH OF CONTRACT</u>
### (on behalf of the Plaintiff and the Class)

60.     Paragraphs 1–59 are hereby incorporated by reference.

61.     This Count is brought by Plaintiff individually and on behalf of the Class.

12

62.     Plaintiff and all members of the putative Class paid all premiums and otherwise satisfied all conditions precedent, as evidenced by, *inter alia*, the fact that Defendant determined the claims were covered claims.

63.     Plaintiff and all members of the putative class made claims under their insurance contracts, which Defendant determined to be total losses. Defendant purported to pay Plaintiff and each Class member the ACV of their totaled vehicles.

64.     Defendant, however, failed to fully pay ACV because Defendant applied the arbitrary and/or inaccurate Negotiation Reduction to comparable vehicles, resulting in an across-the-board reduction in vehicle valuations, resulting in an underpayment to Plaintiff and each Class member.

65.     Given the duties and obligations imposed by the terms and conditions of the form insurance contract, interpreted in light of and (if necessary) conformed to Michigan law, Defendant's application of the Negotiation Reduction constituted a breach of Defendant's obligations under its insurance contracts.

66.     Plaintiff and putative members of the Class were damaged by Defendant's breaches of contract in amounts that will be demonstrated according to proof.

67.     Plaintiff and putative members of the Class are entitled to compensatory damages, penalties, costs, attorneys' fees, and all other relief allowable by law and/or that this Court deems just and proper.

## COUNT II: VIOLATION OF DUTY OF GOOD FAITH AND FAIR DEALING
### (on behalf of Plaintiff and the Valuation Class)

68.     Paragraphs 1–59 are hereby incorporated by reference.

69.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each

other in a way that could not have been contemplated at the time the contract was drafted; to do anything that will destroy the other party's right to receive the benefit of the contract; and to prevent a party that reserves discretion from exercising that discretion in bad faith.

70.     Defendant's application of an arbitrary and statistically invalid Negotiation Adjustment was made in bad faith for no purpose other than to minimize Defendant's payment obligations under its insurance contracts.

71.     As a result, Plaintiff and members of the putative Class are entitled to compensatory damages, along with all penalties, attorneys' fees, costs, expenses, and any other relief allowable by law and/or that this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of the Class that include all other persons similarly situated, prays that State Farm Mutual Automobile Insurance Company be required to appear and answer the Complaint, and after due proceedings had, that there by judgment rendered herein in favor of Plaintiff and the Class, and against Defendant as follows:

a) For an order certifying this action as a class action on behalf of the Class, with Plaintiff serving as representative of the Class and with the undersigned serving as Counsel for the Class;

b)  For notice to be sent to the Class in a form and manner approved by the Court and comporting with due process;

c) For an award of compensatory damages in amounts owed pursuant to the policies of insurance and Michigan law;

d) For all penalties, expenses, and relief allowable by law;

e) For all other damages according to proof;

14

f)  For an award of attorneys' fees and expenses;

g)  For costs of suit incurred herein;

h)  For pre-judgment and post-judgment interests on any amounts awarded; and

i)  For such other general and/or equitable relief to which the Plaintiff and/or the Class

may be entitled that this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands trial by jury on all issues.

Dated: November 2, 2022                                    Respectfully submitted,

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
P O Box 7711
Ann Arbor, MI  48107
(734) 274-9374
drewmcg@topclasslaw.com

*Attorney For Plaintiff and the Proposed Class*

15

# EXHIBIT A

Report Date 01/06/21                                                                 2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon

Solera | Audatex

# Autosource
## Market-Driven Valuation™

State Farm Insurance is dedicated to delivering exceptional service to you in reference to your claim 22-15C7-45P01 from loss date 01/01/2021 on a 2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon. State Farm Insurance has selected Audatex, an independent vehicle valuation company, to prepare a comprehensive vehicle valuation for your vehicle. This valuation report was prepared specifically for your vehicle and represents a fair and accurate value driven by the retail used vehicle market.

In these pages, you will find:
=> Vehicle Inspection
=> Market Overview
=> Valuation Detail

## Market Value
## $2,375



---

**The Valuation Process**

The breadth and depth of the Audatex used vehicle database makes Autosource the most comprehensive market-driven valuation process available. Audatex has been determining locally sensitive, fair, and accurate market values for vehicles since 1985, with more than 30 million vehicles valued. The Autosource Market Value includes vehicles for sale at dealerships and private party sellers, starting right in the local market.

---

**Valuation Detail**

**1. 2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon**

|  | Comparable 1 | Your Vehicle | Adjustments |
|---|---|---|---|
| **Price** | Pontiac, Mi |  | **$3,596** |
| Odometer | 206,207 Mi(Actual) | 238,151 Mi(Actual) | -240 |
| Equipment | OnStar System |  | -70 |
|  |  | Roof Rack Cross Bars | 5 |
|  |  | Tow Hooks | 5 |
| Packages |  | Preferred Equipment Pkg. | 50 |
|  |  |  |  |
|  |  | Comparable 1 Adjusted Price | $3,346 |

**2. 2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon**

|  | Comparable 2 | Your Vehicle | Adjustments |
|---|---|---|---|
| **Price** | Celina, Oh |  | **$4,397** |

Report Date 01/06/21                                                      2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon

| Odometer | 127,677 Mi(Actual) | 238,151 Mi(Actual) | -830 |
| | Locking Differential | | -25 |
| | MP3 Decoder | | -15 |
| | OnStar System | | -70 |
| | Power Drivers Seat | | -30 |
| | Rear Entertainment Systm | | -130 |

| | | Comparable 2 Adjusted Price | $3,297 |

### 3. 2005 Chevrolet Trailblazer EXT LT 4WD 4D Wagon

| | Comparable 3 | Your Vehicle | Adjustments |
|---|---|---|---|
| **Price** | Battle Creek, Mi | | **$3,215** |
| Odometer | 182,000 Mi(Actual) | 238,151 Mi(Actual) | -420 |
| | | Cruise Control | 30 |
| | | Roof Rack Cross Bars | 5 |
| | | Tow Hooks | 5 |
| Packages | | Preferred Equipment Pkg. | 50 |

| | | Comparable 3 Adjusted Price | $2,885 |

### 4. 2005 Chevrolet Trailblazer EXT LT 4WD 4D Wagon

| | Comparable 4 | Your Vehicle | Adjustments |
|---|---|---|---|
| **Price** | Holland, Mi | | **$4,347** |
| Odometer | 148,118 Mi(Actual) | 238,151 Mi(Actual) | -675 |
| | Automatic Dimming Mirror | | -20 |
| | Bose Sound System | | -50 |
| | Navigation System | | -200 |
| | OnStar System | | -70 |
| | Power Adjustable Pedals | | -15 |
| | Compact Disc W/Tape | AM/FM CD Player | -15 |
| | | Roof Rack Cross Bars | 5 |
| | Rear Entertainment Systm | | -130 |
| | Rain-Sensing W/S Wipers | | -5 |
| | Leather Seats | Velour/Cloth Seats | -125 |
| | | Tow Hooks | 5 |

| | Comparable 4 Adjusted Price | $3,052 |

**Final Market Value Calculation**

| 1. 2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon | $3,346 |
| 2. 2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon | $3,297 |
| 3. 2005 Chevrolet Trailblazer EXT LT 4WD 4D Wagon | $2,885 |
| 4. 2005 Chevrolet Trailblazer EXT LT 4WD 4D Wagon | $3,052 |

| | | Average Price | $3,145 |

**Condition**

| Category | Typical Condition | Loss Vehicle Condition | |
| Body Condition | Moderate Damage | Serious Damage | -770 |

| | | **Total Condition Adjusted Market Value** | **$2,375** |

Report Date 01/06/21                                                                                   2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon

| | |
|---|---|
| Sales Tax 6.0000% | 142.50 |
| Deductible | -500.00 |
| **Net Adjusted Value** | **$2,017.50** |

This valuation was processed using our Multiple Comparable valuation methodology.

---

**Valuation Notes**

- o  **Loss vehicle description was provided by State Farm Insurance**
- o  **Adjustments of Special Note**
  - ¤  The requested Exception valuation has been processed using one or more Comparables in order to meet state regulatory requirements.
  - ¤  An odometer adjustment of 0.75 cents per mile/kilometer has been applied. This adjustment is based on the vehicle year, vehicle category and market area. Odometer adjustments are capped at 40% of the vehicle's starting value.
  - ¤  Typical miles for this 2005 Chevrolet Trailblazer EXT in Michigan is 158,145.
  - ¤  No special adjustments were made for this vehicle.
  - ¤  All values are in U.S. dollars.
- o  **Autosource Valuation Process**
  - ¤  Over 8,000,000 vehicles are entered weekly into the database used for researching this value. This database includes dealer inspected, dealer inventory, dealer advertised, phone verified and advertised private party vehicles.
  - ¤  The originating search area for this valuation was Lansing, Michigan.
  - ¤  The market area expansion was authorized by Autosource Guidelines.
  - ¤  The value of the Package adjustments displayed include only those items that cannot be purchased individually. Other equipment items included in the package that can be purchased separately are adjusted with the vehicle equipment, and these adjustments are noted by the applicable options.
  - ¤
- o  **Other Adjustments or Comments**
  - ¤  est & vir completed vir off copart photos due to covid-19, cond rating assumed typical unless photos supported different rating.
  - ¤  The tax was calculated based on a date of loss of 01/01/2021 using zip 48911-6761, in Lansing, County, Michigan. The city may vary from search area to reflect correct tax location.

| Area | Taxed | Rate | Total | Tax % of Market Value |
|---|---|---|---|---|
| Michigan | $2,375 | 6.0000% | $142.50 | 6.0000% |
| | | Total Tax: | $142.50 | 6.0000% |

- o  **Conditioning Notes**
  - ¤  **INTERIOR**
    - °  **Seats**: Sun or weather damage.
    - °  **Carpets**: Sun or weather damage.
  - ¤  **EXTERIOR**
    - °  **Body**: Substantial areas rusted through.
    - °  **Paint**: Extensive chipping.
    - °  **Ext Trim**: Scrapes or peeling paint on chrome and bumper covers.

---

**Vehicle Description**

# VIN: 1GNET16S456146585

*2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon*

**238,151 Miles Actual**

*6cyl Gasoline 4.2*
*4 Speed Automatic*



Report Date 01/06/21                                                                2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon

| | | | |
|---|---|---|---|
| Interior | *Dual Air Conditioning* | *Cruise Control* | *Center Console* |
| | *Bucket Seats* | *Garage Door Opener* | *Intermittent Wipers* |
| | *Lighted Entry System* | *Overhead Console* | *Power Door Locks* |
| | *Power Windows* | *Rear Heater* | *7 Passenger Seating* |
| | *Velour/Cloth Seats* | *Tachometer* | *Third Seat (trucks)* |
| | *Tilt Steering Wheel* | | |
| | | | |
| Exterior | *Privacy Glass* | *Roof/Luggage Rack* | *Rear Window Wiper/Washer* |
| | *Tinted Glass* | *Tow Hooks* | *Trailer Hitch* |
| | *Aluminum/Alloy Wheels* | | |
| | | | |
| Mechanical | *Auto Locking Hubs (4WD)* | *Power Brakes* | *Power Steering* |
| | *Camper/Towing Package* | *Electronic Transfer Case* | |
| | | | |
| Safety | *Dual Airbags* | *Anti-Lock Brakes* | *Daytime Running Lights* |
| | *Fog Lights* | | |
| | | | |
| Entertainment | *AM/FM CD Player* | | |

| | |
|---|---|
| Packages | *Preferred Equipment Pkg., Alarm System, Bodyside Moldings, Rear Window Defroster, Heated Power Mirrors, Floor Mats, Keyless Entry System, Roof Rack Cross Bars* |
| | |
| Trim Levels | *LS, LT                                          * Indicates your trim level |

A detailed description of your vehicle was provided to Autosource by a trained appraiser. Through a partnership with Chevrolet, Audatex AudaVIN retrieves the individual vehicle specifications to identify the vehicle specifications including equipment, packages, engine and transmission. Contact State Farm Insurance if revisions are necessary. The bold/italic font indicates options reported by the manufacturer.

---

## Vehicle Condition

| | |
|---|---|
| **Seats** | Moderate Wear. Sun Or Weather Damage. |
| **Carpets** | Moderate Wear. Sun Or Weather Damage. |
| **Int Trim** | Moderate Damage |
| **Glass** | Good |
| **Headliner** | Good |
| **Body** | Serious Damage. Substantial Areas Rusted Through. |
| **Paint** | Moderate Damage. Extensive Chipping. |
| **Ext Trim** | Moderate Damage. Scrapes Or Peeling Paint On Chrome And Bumper Covers. |
| **Engine** | Minor Work |
| **Transmission** | Minor Work |
| **Front Tires** | Good |
| **Rear Tires** | Good |

---

**Market Overview**



## 🔲 What is my Vehicle Market Value based on?

**48911-6761, Lansing Michigan**--Research for your vehicle was based on market analysis originating from your zip/postal code.

Fair and accurate market valuations must balance geographic location with comparability of one vehicle to others. Having the largest and most current database of vehicles for sale provides a comprehensive view of your vehicle's market. In addition to the vehicle inventories received directly from dealerships, Autosource finds comparable vehicle information for vehicles in the same places most buyers look for them--local and national internet websites, vehicle guides, publications and partnerships representing more than 10,000 independent vehicle sources.

## 🔲 How did Autosource make adjustments for my vehicle?

The main factors that affect the retail selling price and marketability of a vehicle are **odometer, equipment and condition**. Therefore, Autosource valuations include adjustments that fairly consider the differences between your vehicle and the typical vehicle found in the market.

- ○ **Odometer**
  - ▫ Adjustments are made to account for the odometer differences between the loss vehicle and comparable(s).
  - ▫ The odometer adjustment is based on 0.75 cents per mile specific to the 2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon in the state of Michigan. Odometer adjustments are capped at 40% of the vehicle's starting value.
- ○ **Equipment**
  - ▫ Adjustments are made to account for the differences in equipment between the loss vehicle and comparable(s).
  - ▫ Equipment adjustments are based on the manufacturer's retail price, adjusted for depreciation
- ○ **Condition**
  - ▫ Typical condition is based on hundreds of inspected vehicles
  - ▫ Condition adjustments are based on a percentage of the vehicle's value

---

**Comparable Vehicle Details**

The following information provides the details for the vehicles used to calculate the Autosource Value. The selling price may be substantially less than the asking price. Where indicated, the asking price has been adjusted to account for typical negotiation according to each comparables price.

---

| 1 | **2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon** | **1GNET16S956198147** | **$3,596** |

Stock# 10635. 206207 Miles. 6 Cylinder 4.2 Engine, 4 Speed Automatic, Anti-Lock Brakes, Auto Locking Hubs (4WD), Aluminum/Alloy Wheels, Bucket Seats, Cruise Control, AM/FM CD Player, Center Console, Dual Airbags, Dual Air Conditioning, Daytime Running Lights, Electronic Transfer Case, Fog Lights, Garage Door Opener, Intermittent Wipers, Lighted Entry System, Overhead Console, OnStar System, 7 Passenger Seating, Power Brakes, Power Door Locks, Privacy Glass, Power Steering, Power Windows, Roof/Luggage Rack, Rear Heater, Rear Window Wiper/Washer, Tachometer, Third Seat (trucks), Tinted Glass, Camper/Towing Package, Trailer Hitch, Tilt Steering Wheel, Velour/Cloth Seats, Emergency Communication System, Front Bucket Seats, Center Armrest, RADIO DATA SYSTEM, Smooth Ride Suspension.

Offered for sale by Newcomb's Auto Sales in Pontiac, MI, (248) 373-1422. Vehicle information by Vast on 12/28/20.

The advertised price of $3,996 was adjusted to account for typical negotiation.

---

| 2 | **2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon** | **1GNET16S056118279** | **$4,397** |

Stock# 15397A. 127677 Miles. 6 Cylinder 4.2 Engine, 4 Speed Automatic, Preferred Equipment Pkg., Anti-Lock Brakes, Auto Locking Hubs (4WD), Alarm System, Aluminum/Alloy Wheels, Bodyside Moldings, Bucket Seats, Cruise Control, AM/FM CD Player, Center Console, Dual Airbags, Dual Air Conditioning, Rear Window Defroster, Heated Power Mirrors, Daytime Running Lights, Power Drivers Seat, Electronic Transfer Case, Floor Mats, Fog Lights, Garage Door Opener, Intermittent Wipers, Keyless Entry System, Locking Differential, Lighted Entry System, MP3 Decoder, Overhead Console, OnStar System, 7 Passenger

Seating, Power Brakes, Power Door Locks, Privacy Glass, Power Steering, Power Windows, Roof/Luggage Rack, Roof Rack Cross Bars, Rear Entertainment Systm, Rear Heater, Rear Window Wiper/Washer, Tachometer, Third Seat (trucks), Tinted Glass, Tow Hooks, Camper/Towing Package, Trailer Hitch, Tilt Steering Wheel, Velour/Cloth Seats, Luggage, Communication System, Smooth Ride Suspension.

Offered for sale by Kerns Ford Lincoln Truck Cente in Celina, OH, (567) 510-0557. Vehicle information by *Leading Internet Auto Site on 12/15/20.

The advertised price of $4,886 was adjusted to account for typical negotiation.

| 3 | 2005 Chevrolet Trailblazer EXT LT 4WD 4D Wagon | 1GNET16S556124840 | $3,215 |
|---|---|---|---|

Stock# B6995. 182000 Miles. 6 Cylinder 4.2 Engine, 4 Speed Automatic, LT Package, Anti-Lock Brakes, Auto Locking Hubs (4WD), Alarm System, Aluminum/Alloy Wheels, Bucket Seats, AM/FM CD Player, Center Console, Dual Airbags, Dual Air Conditioning, Rear Window Defroster, Heated Power Mirrors, Power Drivers Seat, Electronic Transfer Case, Floor Mats, Fog Lights, Garage Door Opener, Intermittent Wipers, Keyless Entry System, Lighted Entry System, Overhead Console, 7 Passenger Seating, Power Brakes, Power Door Locks, Power Quarter Windows, Privacy Glass, Power Steering, Power Windows, Roof/Luggage Rack, Rear Heater, Rear Window Wiper/Washer, Tachometer, Third Seat (trucks), Tinted Glass, Camper/Towing Package, Trailer Hitch, Tilt Steering Wheel, Velour/Cloth Seats.

Offered for sale by Dealer in Battle Creek, MI, (269) 883-6205. Vehicle information by Vast on 12/21/20.

The advertised price of $4,000 was adjusted to account for differences in vehicle description ($ -385) and typical negotiation.

| 4 | 2005 Chevrolet Trailblazer EXT LT 4WD 4D Wagon | 1GNET16S956205484 | $4,347 |
|---|---|---|---|

Stock# 56205484. 148118 Miles. 6 Cylinder 4.2 Engine, 4 Speed Automatic, LT Package, Preferred Equipment Pkg., Anti-Lock Brakes, Automatic Dimming Mirror, Auto Locking Hubs (4WD), Alarm System, Aluminum/Alloy Wheels, Bose Sound System, Bucket Seats, Cruise Control, Compact Disc W/Tape, Center Console, Dual Airbags, Dual Air Conditioning, Rear Window Defroster, Heated Power Mirrors, Driver Information Sys, Dual Zone Auto A/C, Dual Power Seats, Electronic Transfer Case, Floor Mats, Fog Lights, Garage Door Opener, Heated Front Seats, Intermittent Wipers, Keyless Entry System, Lighted Entry System, Leather Steering Wheel, Leather Seats, Navigation System, Overhead Console, OnStar System, 7 Passenger Seating, Power Brakes, Power Door Locks, Power Quarter Windows, Privacy Glass, Power Steering, Power Windows, Power Adjustable Pedals, Roof/Luggage Rack, Rear Entertainment Systm, Rear Heater, Rear Seat Audio Controls, Rain-Sensing W/S Wipers, Rear Window Wiper/Washer, Strg Wheel Radio Control, Tachometer, Third Seat (trucks), Tinted Glass, Camper/Towing Package, Trailer Hitch, Tilt Steering Wheel, 17 Inch Wheels And Tires, Emergency Communication System, Entertainment Package, Floor Mats, Front Bucket Seats, Center Armrest, Leather Trimmed Interior, Luxury Package, Preferred Equipment Package, RADIO DATA SYSTEM, Rear Power Windows, Smooth Ride Suspension.

Offered for sale by Elhart Automotive Campus in Holland, MI, (616) 392-8516. Vehicle information by Cars.com on 11/16/20.

The advertised price of $5,200 was adjusted to account for differences in vehicle description ($ -385) and typical negotiation.

---

## Administrative Data

Jeff GT1X
State Farm Insurance
STATE FARM GREAT LAKES 9 Branch

Tempe AZ 85282

Claimant
Insured Jaegers, Jennifer
Claim 22-15C7-45P01
Loss Date 01/01/2021
Loss Type Collision
Policy
Other

License Expiration 2021-01

---

## VINSOURCE Analysis

VIN 1GNET16S456146585
Decodes as 2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon
Accuracy Decodes Correctly
History No activity was reported

Report Date 01/06/21                                                      2005 Chevrolet Trailblazer EXT LS 4WD 4D Wagon

AudaVIN  Yes

---

**Reported Phone Number Analysis**

No Vehicles Advertised at (517) 619-8172

---

**NICB Report**

NICB/ISO  B027 BALBOA INSURANCE COMPANY
Member
   Claim 6723600145                          Loss Date 03/05/07
Type of Loss PROPERTY/CASUALTY                    Phone 8009980641

NICB/ISO  S037 STATE FARM MUTUAL AUTOMOBILE INSURANCE
Member COMPANY
   Claim 2215C745P                          Loss Date 01/01/21
Type of Loss PROPERTY/CASUALTY                    Phone

---

**Recall Bulletins**

No recall bulletins have been issued that apply to this vehicle

---

**Original Equipment Guide**

| Engine Options | | | Transmission Options | |
|---|---|---|---|---|
| * 6 Cylinder 4.2 Engine | STD | | * 4 Speed Automatic | STD |
|   8 Cylinder 5.3 Engine | $1,500 | | | |

| Other Optional Equipment | | | Convenience Options | |
|---|---|---|---|---|
| * Anti-Lock Brakes | STD | |   Automatic Dimming Mirror | $175 |
| * Auto Locking Hubs (4WD) | STD | | * Cruise Control | $275 |
|   Bodyside Moldings | TYP | | * Dual Air Conditioning | STD |
|   Center Console | STD | | * Rear Window Defroster | TYP |
| * Dual Airbags | STD | | * Daytime Running Lights | STD |
| * Fog Lights | STD | | * Electronic Transfer Case | STD |
|   Head Airbags | $495 | |   Floor Mats | TYP |
| * Intermittent Wipers | STD | |   Garage Door Opener | STD |
| * Keyless Entry System | TYP | | * Tilt Steering Wheel | STD |
|   Locking Differential | $270 | | **Power Accessories** | |
| * Lighted Entry System | STD | | * Heated Power Mirrors | TYP |
| * Overhead Console | STD | |   Power Drivers Seat | $300 |
|   OnStar System | $695 | | * Power Brakes | STD |
| * Privacy Glass | STD | | * Power Door Locks | STD |
| * Roof/Luggage Rack | STD | |   Power Quarter Windows | $130 |
|   Roof Rack Cross Bars | $45 | | * Power Steering | STD |
|   Rear Entertainment Systm | $1,295 | | * Power Windows | STD |
| * Rear Heater | STD | | **Radio/Phone/Alarm Options** | |
| * Rear Window Wiper/Washer | STD | | * Alarm System | TYP |
|   Skid Plates | $130 | |   Bose Sound System | $495 |
|   Side Steps | $375 | | * AM/FM CD Player | STD |

| | | | |
|---|---|---|---|
| * Tachometer | STD | Compact Disc W/Tape | $150 |
| * Tinted Glass | STD | AM/FM In-dash CD Changer | $395 |
| * Tow Hooks | $40 | MP3 Decoder | $135 |
| * Camper/Towing Package | STD | XM Satellite Radio | $325 |
| * Trailer Hitch | STD | | |

| Roof Options | | Seat Options | |
|---|---|---|---|
| Power Moonroof | $950 | * Bucket Seats | STD |
| **Wheel Options** | | * 7 Passenger Seating | STD |
| * Aluminum/Alloy Wheels | STD | * Third Seat (trucks) | STD |
| | | * Velour/Cloth Seats | STD |

| Option Packages | | |
|---|---|---|
| * Preferred Equipment Pkg. | $1,075 | Includes Alarm System, Bodyside Moldings, Rear Window Defroster, Heated Power Mirrors, Floor Mats, Keyless Entry System, Roof Rack Cross Bars |

| | |
|---|---|
| Base retail price | $32,950 |
| **Loss Vehicle manufacturer's suggested retail price as reported** | **$34,340** |

Editions available for the same body style (in order of original cost, increasing): *LS, LT

* Indicates loss vehicle equipment.

---

**About Your Valuation**

This report contains proprietary information of Audatex and its partners and shall not be disclosed to any third party (other than the insurer or insured, or their legal representative; or claimant or claimant's insurer for purposes of subrogation) without Audatex's prior written consent. If you are the insured or claimant and have questions regarding the description of your vehicle, please contact the insurance company that is handling your claim. Information within VINsource/NICB is provided solely to identify potential duplicative claims activity. User agrees to use such information solely for lawful purposes.

Tax rates contained herein are based on general sales tax data provided by Vertex Inc. Excise, use, registration, licensing and other taxes and fees that may be applicable are not included. Audatex makes no representations or warranties concerning the applicability or accuracy of such tax data.

Report Generated by Audatex, a Solera Company

US Pat. No 7912740B2

US Pat. No 8200513B2

US Pat. No 8468038B2

US Pat. No 8725544

© 2021 Audatex North America, Inc. All Rights Reserved.

# EXHIBIT B

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*

 **StateFarm**®

January 6, 2021

Jennifer C Jaegers
900 Long Blvd Apt 584
Lansing MI 48911-6761

**State Farm Claims**
PO Box 52250
Phoenix AZ 85072-2250

RE:  Claim Number:   22-15C7-45P
     Date of Loss:    January 1, 2021
     Vehicle:         2005 Chevrolet TRAILBLAZER EXT
     VIN:             1GNET16S456146585
     Mileage:         238151 (observed at the time of inspection)

Dear Jennifer C Jaegers:

Your policy provides for payment of the actual cash value of your vehicle, less any applicable deductible for your total loss. Actual cash value is generally determined by the age, condition, equipment and mileage of your vehicle at the time the loss occurred.

To assist us in determining actual cash value, we consider information obtained by our representatives, information provided by you, vehicle valuation services, and other sources. If you have additional information you wish us to consider, or if you believe we have not correctly determined the actual cash value of your vehicle, please contact us.

The amount payable to you was determined as follows:

| | |
|---|---|
| Actual Cash Value | $2,375.00 |
| Plus: Taxes | $142.50 |
| Title Transfer: | $23.00 |
| | |
| Subtotal | $2,540.50 |
| Less: Deductible | $500 |
| Payment to Lien/Lease holder (if applicable) | $0.00 |
| Total Net Payable to You | $2,040.50 |

Thank you for choosing State Farm® for your insurance needs.

If you have questions or need assistance, call us at (855) 231-1590 Ext. 711.

22-15C7-45P
Page 2
January 6, 2021

Sincerely,

Elijah Buck
Claim Associate
(855) 231-1590 Ext. 711

State Farm Mutual Automobile Insurance Company

Enclosure(s):  Settlement Documents
               Return Shipping Label

---

Take advantage of our self-service options
Go to statefarm.com® to easily review claim status, select a repair facility, reserve a rental vehicle, update direct deposit account information for claim payments and many other insurance and banking services.

# Insurance Company Detail

## Detailed information for: STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
### System ID: 0000531
1 State Farm Plz

Bloomington, IL 61710-0001

**Entity Type:** Property and Casualty Insurer

**NAIC Number:** 25178

**Ownership Type:** Mutual

**State of Domicile:** IL

**Phone Number:** 309-766-2311

* The number listed is the statutory home office number and not a number consumers should call to obtain insurance quotes.

**Toll Free Number:** 888-690-2882

**Service of Process:**

Resident Agent

Corporation Service Company

2900 West Road, Suite 500

East Lansing, MI 48823

888-690-2882

* Michigan Resident Agent - For the sole purpose of accepting legal papers for lawsuits.

## Licensing Information
(for agent appointments, cancellations, and renewal purposes)

**Address:**

Agency/Sales Resources - CityLine Building 4

1415 State Street, 16th Floor

Richardson, TX 75082

**Phone:**

972-362-3332

## Individuals Appointed by this Entity

## Agencies Appointed by this Entity

# Exhibit E

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

JENNIFER JAEGERS SCHMIDT, individually
and on behalf of others similarly situated,

       Plaintiff,

        v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant.

Case No.: 22-013100-CK

Hon. Sheila Ann Gibson

| | |
|---|---|
| ANDREW J. MCGUINNESS, ESQ.<br>ANDREW J. MCGUINNESS (P42074)<br>*Attorney for Plaintiff*<br>P.O. Box 7711<br>Ann Arbor, MI 48107<br>(734) 274-9374<br>drewmcg@topclasslaw.com | MILLER CANFIELD PADDOCK & STONE, PLC<br>JEFFREY A. CRAPKO ((P78487)<br>NASHARA A.L. PEART (P83078)<br>*Attorneys for Defendant*<br>150 W Jefferson Ave, Suite 2500<br>Detroit, MI 48226<br>(248) 267-3237<br>(313) 496-7924<br>crapko@millercanfield.com<br>peart@millercanfield.com |

## <u>NOTICE OF FILING NOTICE OF REMOVAL</u>

Please take notice that Defendant State Farm Mutual Automobile Insurance Company, filed with the Clerk of the United States District Court for the Eastern District of Michigan, a Notice of Removal of the above-captioned action. Pursuant to 28 U.S.C. § 1446(d), Defendant files a time-stamped copy of the Notice of Removal previously filed in the United States District Court for the Eastern District of Michigan, which is attached as **Exhibit 1**. This filing shall effect the removal and the Wayne County Circuit Court shall proceed no further unless the case is remanded.

Respectfully submitted,

/s/Jeffrey A. Crapko
Jeffrey A. Crapko (P78487)
Miller, Canfield, Paddock, and Stone, P.L.C.
150 West Jefferson, Suite 2500
Detroit, MI 48226
P: (248) 267-3237
F: (313) 496-7500
crapko@millercanfield.com


## CERTIFICATE OF SERVICE

The undersigned certifies that on December 2, 2022, he served the foregoing NOTICE OF

FILING NOTICE OF REMOVAL upon the following via MiFile:

ANDREW J. MCGUINNESS, ESQ.
ANDREW J. MCGUINNESS (P42074)
*Attorneys for Plaintiff*
P.O. Box 7711
Ann Arbor, MI 48107
drewmcg@topclasslaw.com


Respectfully submitted,

/s/Jeffrey A. Crapko
Jeffrey A. Crapko (P78487)
Miller, Canfield, Paddock, and Stone, P.L.C.
150 West Jefferson, Suite 2500
Detroit, MI 48226
P: (248) 267-3237
F: (313) 496-7500
crapko@millercanfield.com

2