## UNITED STATES DISTRICT FOUR
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JENNIFER JAEGERS SCHMIDT, individually and on behalf of others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, <br><br> Defendant. | Case No.: 2:22-cv-12926-LVP-KGA <br><br> <u>CLASS ACTION</u> |

## **<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

Plaintiff Jennifer Jaegers Schmidt ("Plaintiff"), individually and on behalf of others similarly situated, with Defendant's written consent[1] pursuant to Federal Rule of Civil Procedure 15(a)(2), hereby files this First Amended Class Action Complaint against Defendant State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm"), and alleges:

---

[1] Counsel for Defendant, State Farm Mutual Automobile Insurance Company, gave written consent to this amendment via email without prejudice to Defendant's ability to file a Rule 12 motion as to this pleading.

## INTRODUCTION

1.      This is a Class Action lawsuit by Plaintiff, who was the named insured under an automobile insurance policy issued by State Farm for private passenger auto physical damage including comprehensive and collision coverage (the "Policy"), pursuant to which Defendant was required to pay the cost to repair an insured vehicle up to the "Actual Cash Value" ("ACV") of the insured vehicle.

2.      Defendant and its vendors possess data demonstrating that vehicles on average are sold for the amount they are listed, meaning there is not a negotiation down from the listed price. Incredibly, and unconscionably, State Farm (through its vendor) simply tosses the data then represents to its insureds that the opposition is true, i.e., that there is a substantial difference between list price and sold price—this is false, and State Farm knows (or should know) that it is false—which is supposedly attributable to negotiation.

3.      Insureds, such as Plaintiff and the putative class members, pay a premium in exchange for State Farm's promise to repair any damage to an insured vehicle caused by a covered peril. However, State Farm's obligation to repair any damage is not limitless; rather, it is limited (or capped) to the ACV of the insured vehicle.

4.     The goal of ACV in insurance contracts is that of indemnity. By promising to pay the cost to repair the vehicle, limited to ACV in the event of a total loss, Defendant promises to put its insureds back to their pre-loss position.

5.     When determining the ACV of a total loss vehicle, it is improper for an automobile insurance company, such as State Farm, to undervalue and underpay the claims by manipulating the data used to value the vehicles.

6.     State Farm is precluded under its Policies and Michigan law from making unsupported, arbitrary reductions to reduce claims payments to insureds.

7.     Notwithstanding its obligations, State Farm systemically fails to pay its insureds the ACV of their total-loss vehicles by applying improper and unreasonable Typical Negotiation Adjustments ("Negotiation Reduction") to the value of the comparable vehicles considered in its valuation process. These reductions are contrary to appraisal standards and methodologies, not based in fact, contrary to the used-car industry's pricing and inventory management practices, and are applied by Defendant solely as a basis to reduce the amount paid to its insureds after a total loss.

8.     The across-the-board Negotiation Reduction does not reflect market realities. Indeed, Defendant applies the "typical negotiation" adjustment without contacting the identified dealerships or sellers, or considering whether the online retailer ever discounts its vehicles. Notably, in applying a universal percentage-based "typical negotiation" adjustment reduction, Defendant failed to consider that

it has for decades been the dominant practice of used car dealers to price vehicles to market and not deviate from that advertised cash price. It simply is not the case—and has not been for well over 10-15 years—that used car dealers routinely price above market with the hopes of striking a great deal with some terrible negotiating consumer but with the expectation of probably having to negotiate down from that price. That is not how the market works anymore, given, amongst other things, the ubiquity of Internet advertising and shopping and the development of sophisticated pricing tools (for dealers) and comparison tools (for consumers). Indeed, particularly during the COVID-19 pandemic, and the related supply chain problems with parts such as electronics for vehicles, used cars have been selling for a premium, with sale price typically increasing from the posted price.

9.     Regardless, State Farm applied a Negotiation Reduction of approximately 10% for all comparable vehicles listed in Plaintiff's valuation report despite that the vehicle prices were pulled from multiple different dealerships. (Exhibit A ("Valuation Report") at pp. 5-6). There was an identical 10% downward reduction to each of the base values of the four comparable vehicles, which were then used to derive the value of Plaintiff's total loss vehicle, resulting in a 10% deduction in Plaintiff's vehicle value and Plaintiff's ultimate insurance payout. *Id.*

10.     The reductions described in the preceding paragraph are wholly arbitrary and not based on any statistical, objective, or verifiable data.

11.     Moreover, to arrive at the 10% Negotiation Adjustment, State Farm categorically ***excluded*** transactions that undermine its flawed thesis: for example, transactions where the sold price exceeds the list price and every transaction where the sold price equaled the advertised price were excluded, allowing Defendant to thumb the scale in its favor. This practice ignores current market realities in which dealerships often charge more than advertised price to customers.

12.     The Negotiation Reduction is not documented nor justified in detail. The basis for the settlement offer with the 10% reduction and how it was derived was never explained to Plaintiff. The only purported explanation for the reduction in the offer is found in Plaintiff's multi-page valuation report are two general, nondescript statements buried deep in the document.  *See* Exhibit A at p. 5 ("The selling price may be substantially less than the asking price. Where indicated, the asking price has been adjusted to account for typical negotiation according to each comparable[']s price."); *see id.* at 5–6 (providing: "[t]he advertised price of [each comparable vehicle advertised price] was adjusted to account for typical negotiation"). No other explanation was provided by State Farm to justify the Negotiation Reduction.

13.     The Negotiation Reduction was applied on each of the comparable vehicles on top of adjustments for differences such as mileage, options, and equipment. The deduction is neither specific nor appropriate as to dollar amount,

and no explanation is provided as to the evidentiary basis for the 10% across-the-board reduction.

14.     This pattern and practice of deliberately and arbitrarily undervaluing comparable and total-loss vehicles when paying first-party automobile total loss claims results in Defendant underpaying insureds for the ACV of their total-loss vehicles, in breach of the obligations imposed by its insurance policies and contractual duties to insureds.

15.     Plaintiff and the putative class members lived up to their end of the bargain by paying the premiums owed and abiding by all contractual requirements.

16.     State Farm did not live up to its obligations under the subject policies. Rather, State Farm reduced the ACV value of total-loss vehicles through use of the arbitrary and unsupported Negotiation Reduction.

17.     Defendant's standardized policy language as to coverage for the ACV of total-loss vehicles is present in every auto policy issued by Defendant in Michigan.

18.     State Farm's failure to pay the full and complete ACV of insured vehicles on first-party claims constitutes a material and bad faith breach of contract as to Plaintiff and every member of the putative class defined herein.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §

1332(d)(2) because (a) Plaintiff is a member of the putative class that consists of at

least 100 members and she and the Defendant are citizens of different states; (b) the

amount-in-controversy exceeds $5 million dollars exclusive of interest and costs,

and (c) none of the exceptions under § 1332 apply to this claim.

20.     Venue is proper in this Court because a substantial portion of the acts

and course of conduct giving rise to the claims alleged occurred within the district

and the Defendant is subject to personal jurisdiction here.

21.     At all relevant times, Plaintiff and putative class members were

Michigan policyholders and citizens.

22.     The defendant is a citizen of Illinois because it is incorporated in the

State of Illinois and keeps its principal place of business in Bloomington, Illinois.

## STATE FARM'S INSURANCE POLICY

23.     Defendant is an automobile insurer in Michigan and provides, *inter

alia*, coverage for first-party property damage under collision and/or comprehensive

coverage. Such policies, issued to Plaintiff and all putative class members, are form

policies that promise to pay for loss up to a limit on liability of ACV.

24.     Pursuant to its standard policy language applicable (in relevant part) to

all members of the putative Class, Defendant promises to pay for loss.

6

25.    In its Payment for Loss provision, Defendant promises to repair or replace the vehicle or to pay the cost to do so in money.

26.    When an insured vehicle suffers a loss, Defendant determines the amount it would cost to repair the damage (including, if necessary, replacement of component parts), including, inter alia, applicable labor rates, cost of materials, paint, etc. This amount constitutes the amount of "loss" Defendant is obligated to pay its insureds.

27.    However, Defendant's liability for that amount of loss is not limitless. Where such amount exceeds the pre-loss ACV of the insured vehicle, Defendant is not liable for the full amount of loss; instead, its liability is limited to the lesser amount of ACV. This scenario – where the repair cost (plus salvage value) exceeds the vehicle's ACV – is known in the insurance industry as a "total loss".

28.    By determining that Plaintiff's and class members' vehicles were a "total loss," Defendant determined the cost to repair the respective vehicles exceeded their ACV.

29.    Thus, the applicable obligation pursuant to the Policy is that Defendant will pay the ACV of the insured vehicle in the event it is determined by Defendant to be a total loss.

## STATE FARM'S NEGOTIATION REDUCTIONS

30.    Most car accidents are "partial" losses, which is the term used where insurers (including Defendant) pay to repair the damage to a vehicle. Where repair of the vehicle is impossible or uneconomical, however, the loss is considered a "total loss." When Defendant determines that a vehicle is a total loss it elects to pay the vehicle's ACV.

31.    Pursuant to the basic tenets of insurance law, once Defendant elects to pay ACV, it is bound by that election and cannot thereafter change its mind and decide later to pay the cost to repair the vehicle. *See* 12A Couch on Ins. § 176.23. Put differently, when Defendant declares a vehicle a total loss and voluntarily invokes its limitation of liability, it is obligated under its insurance Policy to pay the ACV of the vehicle to the insured.

32.    Under Defendant's Policy with Plaintiff (and its similar policies with putative class members), in the event of a total loss it must pay the ACV of the covered vehicle.

33.    Defendant fails entirely to abide by its contractual requirements by failing to pay its insureds the ACV of their vehicles.

34.    Defendant purports to calculate the ACV of total-loss vehicles via a third-party vendor, Audatex or AudaExplore, through a system called Autosource Market-Driven Valuation ("Autosource"). Ostensibly, the Audatex system identifies

the list price of comparable vehicles, which it then adjusts based on factors such as differences in equipment, packages, and/or condition between the comparable vehicle and the total-loss vehicle.

35.     However, in violation of Michigan law and its policy promise to pay ACV, Defendant incorporates unfounded Negotiation Reductions into its Audatex calculations.

36.     Defendant represents that the Negotiation Reduction reflects some sort of average difference between list price and 'what the dealer would be willing' to sell it for. But Defendant does not actually base the Negotiation Reduction on conversations with the sellers of the comparable vehicles or even statistically valid data or calculations. Indeed, the 10% reduction applied to Plaintiff's vehicle is not supported by a comparison of list versus sold vehicles prices within the State of Michigan.

37.     Upon information and belief, State Farm's 10% Negotiation Reduction is arbitrary, not based on valid data, and is nothing more than an illegitimate and capricious way to undervalue the total-loss vehicles.

38.     Upon information and belief, Defendant instructs Audatex to apply the Negotiation Reduction. Other insurers who use the Audatex system do not instruct Autosource to apply the Negotiation Reduction to the price of comparable vehicles. Moreover, State Farm does not apply Negotiation Reductions when adjusting total

9

loss auto insurance claims in states like California. There is no justification for applying these adjustments when valuing total losses in Michigan while not subjecting California claimants to the same negative adjustments.

39.    Upon information and belief, the data transactions shows there is, on average, essentially no difference between list price and sold price. Defendant and its vendors simply ignore or exclude all the data they don't like.

## PLAINTIFF'S ACCIDENT AND VALUATION

40.    At all times relevant, Plaintiff was insured under a policy of insurance issued by Defendant for a 2005 Chevrolet Trailblazer.

41.    On or about January 1, 2021, Plaintiff's vehicle sustained damage. After Plaintiff submitted a physical damage claim, Defendant declined to pay to repair the vehicle, determined it was a total-loss, and elected to pay Plaintiff a cash amount for the ACV of the vehicle.

42.    Defendant purportedly determined that the vehicle value was $2,375.00, to which Defendant added sales tax and a title fee and subtracted the deductible for a total of $2,040.50. *See* Exhibit B ("Settlement Letter") at p. 1.

43.    To arrive at this estimated vehicle value, Defendant relied on the Audatex valuation report, which purports to contain the values of comparable vehicles listed for sale (or sometimes recently sold) in Plaintiff's geographic area. The report also contains a purported valuation for Plaintiff's total-loss vehicle, which

is based on the advertised prices for the comparable vehicles listed in the report. The report then adjusts the advertised prices of the comparable vehicles to account for differences in equipment, mileage, and vehicle configuration. (Exhibit A).

44.    From the advertised prices for the comparable vehicles, State Farm applied the 10% Negotiation Reduction to each comparable vehicle, resulting in an across-the-board deduction in vehicle price for each comparable vehicle, which thereby caused a reduction in the vehicle value of Plaintiff's total-loss vehicle. Defendant provided no data specific to the comparable vehicles or any explanation of industry practices in the valuation report that would support the Negotiation Reduction. (*Id.*).

45.    Plaintiff does not dispute in this Complaint the accuracy of the advertised prices for the comparable vehicles. Plaintiff does not dispute in this Complaint that the comparable vehicles are a fair representation of comparable vehicles in the market area. Plaintiff does not dispute in this Complaint that State Farm can adjust the comparable vehicles based on differences (if any) in equipment, mileage, and vehicle configuration. Plaintiff does not dispute in this Complaint that State Farm accurately identifies differences (if any) in equipment, mileage, and vehicle configuration. And, Plaintiff does not dispute in this Complaint the amount of the adjustments State Farm applied to account for the differences (if any) in equipment, mileage, and vehicle configuration.

46.    Put differently, Plaintiff does not challenge in this Complaint the Audatex methodology except for the application (and the "calculation") of the Negotiation Reduction, which Plaintiff alleges is arbitrary, deceptive, inaccurate, and made in bad faith.

47.    By failing to pay full ACV by virtue of the Negotiation Reduction, Defendant breached its insurance policy.

## STATE FARM'S INSURANCE POLICY

48.    Defendant is aware that the Negotiation Reduction applied in the Autosource valuation report results in anti-contractual insufficient claims payments.

49.    Defendant's failure to properly pay the ACV of an insured's loss constitutes a breach of contract.

50.    Moreover, the aforementioned conduct – and breaches of contract – are the result of actions that constitute bad faith, and are capricious and arbitrary in violation of Defendant's duties and obligations to its insureds.

51.     Defendant's conduct set forth herein and use of the Negotiation Reduction violate Defendant's "duty of good faith and fair dealing" by failing to act fairly and in good faith with its insureds.

52.    Upon information and belief, Defendant intentionally undervalues the total-loss claims through application of the Negotiation Reduction and otherwise

violates its duty of good faith and fair dealing and the covenant of good faith applicable under Michigan law.

53.   Defendant's Policy, to the extent inconsistent, must be conformed to comply with Michigan law.

54.   All conditions precedent to the initiation of this suit have been satisfied.

## CLASS ACTION ALLEGATIONS

55.   Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to certify and represent the following class (the "Class"):

> All State Farm Indemnity Company insureds, from the earliest allowable time through the date of resolution of this action, who were or are Michigan residents who received a first-party total-loss valuation and payment on an automobile total-loss claim that included a "typical negotiation" or similar adjustment.

56.   Excluded from the Class are Defendant and its agents, employees, subsidiaries, parents, and related entities, as well as the Judge assigned to this case and his or her staff employees. Also excluded from the Class are the undersigned counsel and anyone employed in their law firms.

57.   **Numerosity:** On information and belief, State Farm is one of the principal automobile insurers in Michigan, who has issued hundreds of thousands (if not millions) of automobile insurance policies in Michigan with collision coverage over the past six years. Although unable to allege a precise number of Class members

absent confirmatory discovery, upon information and belief, including investigation by the undersigned and examination of the premiums written by Defendant over the past ten years, Plaintiff reasonably believes that the number of members of the Class numbers in the thousands, such that members of the Class are so numerous that joinder of all individual claims at issue is impracticable. Thus, the Class are sufficiently numerous within the meaning of Rule 23(a)(1).

58. **Commonality:** This litigation raises common questions of law and fact subject to common resolution within the meaning of Rule 23(a)(2), including:

a. Whether Defendant applied a typical negotiation adjustment for total loss claims for a given time period for automobile policies in Michigan;

b. whether Defendant's application of a typical negotiation adjustment results in a breach of Defendant's contractual obligation to pay ACV;

c. whether Defendant's application of a typical negotiation adjustment is a breach of the covenant of good faith and fair dealing;

d. whether Plaintiff and Class members are entitled to damages and the measure of damages owed.

59. **Typicality:** Plaintiff's claims and the defenses thereto are typical of members of the Class within the meaning of Rule 23(a)(3). Defendant injured Plaintiff and members of the Class through uniform misconduct and Plaintiff's legal claims arise from the same core practices. Plaintiff suffered the same harm as all

Class members and Plaintiff's interests are identical to those of the other Class Members.

60. **Adequacy:** Plaintiff will adequately – and zealously – protect the interests of members of the Class. Plaintiff is unaware of any interest in conflict with those of the Class, and Plaintiff and the undersigned have sufficient and adequate resources to prosecute this claim. Plaintiff is sufficiently knowledgeable concerning the subject matter at issue and is committed to protecting putative class members from any unfair or harmful conduct. Moreover, Plaintiff has retained counsel who collectively have successfully litigated hundreds of class actions, including in the insurance context, through settlement and litigated judgments. The undersigned counsel, a member of the bar of this Court, who has extensive experience in class litigation and is well-versed in Michigan law and local rules and procedures. Plaintiff has also retained co-counsel are members in good standing of the bar of the State of Florida, who plan to move for *pro hac vice* admission in due course. As such, the adequacy requirement of Rule 23(a)(4) is satisfied.

61. **Predominance:** The aforementioned common issues of law and fact predominate over any individual issues within the meaning of Rule 23(b)(3). Issues of liability are common to the class, and, as such, even if issues of damages are individualized, that would not preclude class treatment. Moreover, while the ***amount*** of damages will vary, the ***measure*** of damages will not.

62.   **Superiority:** Class treatment is superior to any other viable alternative method of adjudication within the meaning of Rule 23(b)(3), in that:

a.  Neither the size of the Class, nor any other factor, make it likely that difficulties will be encountered in the management of this case as a class action;

b.  The prosecution of separate actions by individual Class members, or the individual joinders of all Class members in this action, is impracticable and would create a significant and unnecessary burden on the resources of the courts and could result in inconsistent adjudication, while a single class action can determine, with judicial economy, the rights of each member of the Class;

c.  Because of the disparity of resources available to Defendant versus those available to individual members of the Class, prosecution of separate actions would work a financial hardship;

d.  The conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each Class member and meets all due process requirements. A class action is also superior to the maintenance of these claims on an individual basis when all actions arise out of the same circumstances and course of conduct; and

e. Because the claims are relatively small compared to the cost, time, and expense of litigation, individual actions will be rendered financially impractical, if not impossible.

63. Class members can be identified and ascertained through objective criteria within Defendant's own possession.

## COUNT I: BREACH OF CONTRACT
### (on behalf of the Plaintiff and the Class)

64. Paragraphs 1–63 are hereby incorporated by reference.

65. This Count is brought by Plaintiff individually and on behalf of the Class.

66. Plaintiff and all members of the putative Class paid all premiums and otherwise satisfied all conditions precedent, as evidenced by, *inter alia*, the fact that Defendant determined the claims were covered claims.

67. Plaintiff and all members of the putative class made claims under their insurance contracts, which Defendant determined to be total losses. Defendant purported to pay Plaintiff and each Class member the ACV of their totaled vehicles.

68. Defendant, however, failed to fully pay ACV because Defendant applied the arbitrary and/or inaccurate Negotiation Reduction to comparable vehicles, resulting in an across-the-board reduction in vehicle valuations, resulting in an underpayment to Plaintiff and each Class member.

69.     Given the duties and obligations imposed by the terms and conditions of the form insurance contract, interpreted in light of and (if necessary) conformed to Michigan law, Defendant's application of the Negotiation Reduction constituted a breach of Defendant's obligations under its insurance contracts.

70.     Plaintiff and putative members of the Class were damaged by Defendant's breaches of contract in amounts that will be demonstrated according to proof.

71.     Plaintiff and putative members of the Class are entitled to compensatory damages, penalties, costs, attorneys' fees, and all other relief allowable by law and/or that this Court deems just and proper.

## COUNT II: VIOLATION OF DUTY OF GOOD FAITH AND FAIR DEALING
**(on behalf of Plaintiff and the Valuation Class)**

72.     Paragraphs 1–63 are hereby incorporated by reference.

73.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted; to do anything that will destroy the other party's right to receive the benefit of the contract; and to prevent a party that reserves discretion from exercising that discretion in bad faith.

74.    Defendant's application of an arbitrary and statistically invalid Negotiation Adjustment was made in bad faith for no purpose other than to minimize Defendant's payment obligations under its insurance contracts.

75.    To the extent Defendant possesses some level of discretion in calculating ACV, Defendant did not exercise that discretion in good faith by egregiously ignoring, excluding, and tossing all data showing transactions where the sold price equaled or exceeded the vehicle's list price.

76.    Defendant also did not exercise that discretion in good faith by assuming any difference between sold and list price is attributable to negotiation off the cash price, and not other reasons unrelated to true market price, such as, for example, a loyalty discount or employee discount or friends/family discount, or because the purchaser agreed to finance the purchase through the dealership.

77.    Defendant's use of the appraisal clause is also not exercised in good faith. Appraisal costs consumers, on average, approximately $700.00-$1,000.00. The average "Negotiation Reduction" in many cases approximates the same amount *or less*. State Farm knows it can impose the arbitrary and unsupported reduction because the cost to recover those damages will normally be as high or higher than the damages itself—not to mention the logistical difficulties and technical challenges faced by an everyday consumer who wishes to go to appraisal against a sophisticated, well-heeled, and legally represented insurance company.

78.    As a result, Plaintiff and members of the putative Class are entitled to compensatory damages, along with all penalties, attorneys' fees, costs, expenses, and any other relief allowable by law and/or that this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of the Class that include all other persons similarly situated, prays that State Farm Mutual Automobile Insurance Company be required to appear and answer the Complaint, and after due proceedings had, that there by judgment rendered herein in favor of Plaintiff and the Class, and against Defendant as follows:

a) For an order certifying this action as a class action on behalf of the Class, with Plaintiff serving as representative of the Class and with the undersigned serving as Counsel for the Class;

b)  For notice to be sent to the Class in a form and manner approved by the Court and comporting with due process;

c) For an award of compensatory damages in amounts owed pursuant to the policies of insurance and Michigan law;

d) For all penalties, expenses, and relief allowable by law;

e) For all other damages according to proof;

f) For an award of attorneys' fees and expenses;

g) For costs of suit incurred herein;

h)  For pre-judgment and post-judgment interests on any amounts awarded; and

i)  For such other general and/or equitable relief to which the Plaintiff and/or the Class may be entitled that this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demand trial by jury on all issues.

Dated: February 10, 2023                    Respectfully submitted,

*/s/ Andrew J. McGuinness*
Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
P O Box 7711
Ann Arbor, MI  48107
(734) 274-9374
drewmcg@topclasslaw.com

**NORMAND PLLC**
Edmund A. Normand
Florida Bar No. 865590
Email: ed@ednormand.com
Joshua R. Jacobson
Florida Bar No. 1002264
Email: jjacobson@normandpllc.com
Email: ean@normandpllc.com
3165 McCrory Place, Suite 175
Orlando, FL 32803
Telephone: (407) 603-6031
Facsimile: (888) 974-2175
***Attorney For Plaintiff and the Proposed Class***

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 10th day of February, 2023, a true and correct copy of the foregoing was filed using the Court's CM/ECF system, which will send an electronic notification to all counsel of record.

/s/*Joshua R. Jacobson*
Joshua R. Jacobson, Esq.
