UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER JAEGERS
SCHMIDT
                    Plaintiff,

v.                                                    Case No. 22-12926
                                                      Honorable Linda V. Parker

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
CO.
                    Defendant.
_____/

### OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 33)

This is a putative class action arising from the assessment of the Actual Cash Value ("ACV") of Plaintiff's automobile pursuant to an insurance policy issued by Defendant State Farm Mutual Automobile Insurance Company ("State Farm" or "Defendant").

This matter is before the Court on Defendant's Motion for Summary Judgment.  (ECF No. 33.)  The motion is fully briefed.  (ECF Nos. 33, 35 & 36.)  Finding the facts and legal arguments adequately presented in the Parties' filings, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the reasons set forth below, the Court **DENIES** Defendant State Farm's Motion for Summary Judgment.

## I.     Background

Plaintiff Schmidt's 2005 Chevrolet Trailblazer was insured under an insurance policy issued by Defendant State Farm.[1]  (ECF No. 35 at PageID.643.) On or about January 1, 2021, Plaintiff's vehicle sustained damage and was considered a "total-loss."  *Id.*

<u>The Policy</u>

The Parties' insurance policy contained a provision entitled "**Limits and Loss Settlement — Comprehensive Coverage and Collision Coverages**" which reads, in relevant part:

> We have the right to choose to settle with you or the owner of the covered vehicle in one of the following ways:
>
> a. Pay the cost to repair the covered vehicle minus any applicable deductible.
>
> *     *     *
>
> b. Pay the actual cash value of the covered vehicle minus any applicable deductible.
>
> (1) The owner of the covered vehicle and we must agree upon the actual cash value of the covered vehicle. If there is disagreement as to the actual cash value of the covered vehicle, then the disagreement will be resolved by appraisal upon written request of the owner or us using the following procedures:
>
> (a) The owner and we will each select a competent appraiser.
> (b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the

---

[1] Plaintiff's policy was for private passenger auto physical damage including comprehensive and collision coverage. (ECF No. 15 at PageID.212.)

2

owner or we may petition a court that has jurisdiction to select the third appraiser.

(c) Each party will pay the cost of its own appraiser, and any attorney or expert witness hired by that party. Both parties will share equally the cost of the third appraiser and, by agreement, any other expenses of the appraisal.

(d) The appraisers shall only determine the actual cash value of the covered vehicle. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the covered vehicle and us.

(f) We do not waive any of our rights by submitting to an appraisal.

(ECF No. 33-7 at PageID.534-35.) (emphasis omitted).

<u>Defendant State Farm's First ACV Payment</u>

Defendant State Farm elected to pay Plaintiff the Actual Cash Value ("ACV") of her vehicle rather than repair it.  Plaintiff alleges that State Farm failed to properly assess and pay the ACV of her vehicle.  It is undisputed that Defendant relied on a report generated by a third-party valuation vendor, Audatex, to assess the ACV of Plaintiff's vehicle.  (ECF No. 33 at PageID.457; ECF No. 35 at PageID.644.)  Plaintiff alleges that Audatex improperly includes a "typical negotiation adjustment" that results in a low ACV determination.  (ECF No. 35 at PageID.644.)[2]  Plaintiff further argues that this Negotiation Reduction amounted

---

[2] *See* ECF No. 15 ¶ 68 ("Defendant applied the arbitrary and/or inaccurate Negotiation Reduction to comparable vehicles, resulting in an across-the-board reduction in vehicle valuations, resulting in an underpayment to Plaintiff.").

to a 10% decrease[3] in her vehicle's ACV and that Defendant's failure to pay the true ACV of her vehicle is a breach of the insurance policy.  (*Id.* at 644-45.)  After adding sales tax and a title transfer fee and subtracting the cost of Plaintiff's deductible, Defendant's ACV payment was $2,040.50.  (ECF No. 33 at PageID.457.)

Litigation and Appraisal

Plaintiff subsequently filed suit against Defendant.  On March 17, 2023, Defendant State Farm filed a motion to dismiss, or in the alternative, to compel appraisal.  (ECF No. 18.)  On April 4, 2024, the Court granted Defendant's motion to compel appraisal and stayed the case pending the outcome of the appraisal.  (ECF No. 28 at PageID.391.)  The appraisal award revealed that Plaintiff's vehicle had a higher ACV and that Plaintiff was underpaid $597.84.  (ECF No. 35 at PageID.647.)  None of the appraisers applied Audatex's "typical negotiation adjustment." *Id.*  On or about January 27, 2025, Defendant paid Plaintiff the difference between its initial payment and the appraisal award.  (ECF No. 33 at PageID.461.)  Defendant filed its motion for summary judgment on April 18, 2025.  (ECF No. 33.)

---

[3] Defendant State Farm provided a footnote explaining the process: "to estimate actual cash value, State Farm's valuation vendor, Audatex, usually started with the advertised prices of comparable vehicles for sale at nearby dealerships as a baseline. Audatex would then adjust the prices of some (but not all) of these comparable vehicles to account for the downward negotiation from the advertised price that often occurs when someone buys a used car." (ECF No. 33 at PageID.458 n. 2.)

## II.     Legal Standard

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The central inquiry when evaluating a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323.  Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient.  *See Liberty Lobby*, 477 U.S. at 252.  The court must accept as true the

non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255.

Although not explicitly addressed in their motion briefs, the Parties appear to agree that Michigan law controls. (*See* ECF No. 33 at PageID.462; ECF No. 35 at PageID.650.) Under Michigan law, construing and interpreting insurance contracts involve "question[s] of law for a court to determine." *Orchard, Hiltz & McCliment, Inc. v. Phx. Ins. Co.*, 146 F. Supp. 3d 879, 885 (E.D. Mich. 2015) (citing *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190 (Mich. 1999); *see also Advance Watch Co. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795, 799 (6th Cir. 1996) (where the facts are undisputed, the court is presented solely with a question of law concerning the construction of an insurance policy). Michigan courts resolve disputed insurance policies in accordance with their terms and do so by resolving ambiguous policies in the insured's favor. *See Hamilton Specialty Ins. Co. v. Transition Inv., LLC*, 818 F. App'x 429, 432 (6th Cir. 2020).

### III.    Analysis

Under Michigan law, a breach of contract claim requires proof of four elements: (1) the existence of a contract between the parties, (2) terms that require performance of certain actions, (3) breach of the terms, and (4) that the breach caused the other party injury. *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir.1999); *see also Doe v. Henry Ford Health Sys.*, 308 Mich. App.

592, 601, 865 N.W.2d 915 (2014).  Here, the Parties do not dispute that the

relevant insurance policy constitutes a binding contract and that its terms require

Defendant to pay Plaintiff the actual cash value of her vehicle.  (ECF No. 35 at

PageID.651; ECF No. 33 at PageID.456.)  However, the Parties disagree as to

whether Defendant breached the contract and what damages, if any, Plaintiff has

suffered.

### A. Breach

The Parties agree that Defendant issued two separate payments to Plaintiff in

an effort to compensate her for the actual cash value ("ACV") of her totaled

vehicle.  (ECF No. 33 at PageID.457; ECF No. 35 at PageID.644-47.)  The first

payment occurred on or about January 12, 2021, when Defendant paid Plaintiff,

prior to initiation of the appraisal process, $2,040.50[4] based on a report prepared

by Audatex.  (ECF 33-6 at PageID.506.)  Thereafter, Plaintiff initiated litigation

and the Court compelled appraisal at Defendant's request.  (*See* ECF No. 28.)  The

appraisal process revealed that the true ACV of Plaintiff's vehicle was $2939.00.[5]

(ECF No. 33 at PageID.461; ECF No. 35 at PageID.646.)  On January 27, 2025,

Defendant issued a second payment in the amount of $597.84 to account for the

---

[4] $2,040.50 was the total amount payable to Plaintiff after Defendant added taxes and fees to the original valuation amount and subtracted Plaintiff's deductible. (ECF No. 33 at PageID.457.)
[5] The appraisal award, including taxes and fees, was $3,138.34.  From this amount, Defendant subtracted the original payment ($2,040.50) and Plaintiff's deductible ($500). (ECF No. 33 at PageID.461.)

difference between the appraisal award and the initial payment.  *Id.*; ECF No. 33-11 at PageID.627.)

The Parties' dispute centers on the legal significance of the two payments. Although the Parties agree that Plaintiff ultimately received the full appraisal amount through Defendant's second payment, they disagree as to whether Defendant's initial payment constituted a breach of the policy by not paying Plaintiff the true ACV of her vehicle.  Plaintiff argues that Defendant breached the policy when it issued the first payment, and that the higher appraisal award simply proves that the first payment did not represent the true ACV of her vehicle.  (ECF No. 35 at PageID.651-53.)  Defendant argues that no breach occurred and that any underpayment was cured when it paid Plaintiff the additional amount following the appraisal.  (ECF No. 33 at PageID.465-68.)

The Court finds that the threshold question of breach depends on the proper interpretation of the policy's definition of "actual cash value" and whether the policy's terms allow Defendant to remedy an initial underpayment without incurring a contractual breach.  "An insurance policy is much the same as any other contract.  It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties."  *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 567; 489 N.W.2d 431, 433 (1992). When interpreting an insurance policy, courts first look to the terms of the policy's

language and give effect to the parties' intent as expressed in the contract as a whole.  *Churchman*, 440 Mich. at 567-68.

The relevant language in the policy provides that if Defendant determines a vehicle to be a "total loss," it may settle the claim by paying "the actual cash value of the covered vehicle minus any applicable deductible."  (ECF No. 33-7 at PageID.535.)  The policy does not provide a definition for "actual cash value." (*See id.*)  In its briefing, Defendant notes that Audatex based its ACV on what it believed would be the vehicle's "fair market value."  (*See* ECF No. 33 at PageID.458, n.2 "[Audatex's calculation] process was designed to estimate the totaled car's actual cash or "fair market" value—that is, the price at which a willing seller would sell a car, and willing buyer would buy it.")  Plaintiff, however, appears to interpret ACV as a vehicle's "replacement cost, less depreciation."[6]  (ECF No. 35 at PageID.642, 644.)  In response, Defendant suggests that Michigan adheres to the "Broad Evidence Rule" when a policy does not define ACV.  (ECF No. 36 at PageID.672, n. 1.)

---

[6] Notably, the policy uses this language in regard to insurance payouts for accidental damage: "the most we will pay for accidental damage is the lesser of: a. reasonable repair costs; or b. replacement costs less depreciation, and, if applicable, the value of loss of use."  (ECF No. 33-7 at PageID.523.)

9

The choice between these definitions could be determinative in assessing whether Defendant breached the policy's requirement to pay ACV.  The Court will therefore begin its analysis by addressing how the term should be interpreted.

Michigan law supports Defendant's position that actual cash value is determined under the Broad Evidence Rule, which permits consideration of a wide range of factors and evidence in assessing ACV.  The Michigan Court of Appeals established this standard in *Davis v. Nat' Am. Ins. Co.*  As the Court explained, "although one early Michigan case [. . .]  held that actual cash value means market value, we do not believe that market value is the sole measure. In fact, we do not believe that any set method is necessary within the appraisal context."  *Davis v. Nat'l Am. Ins. Co.*, 78 Mich. App. 225, 233; 259 N.W.2d 433, 438 (1977); *see also Jollis v. Amica Mut. Ins. Co.*, 804 F. Supp. 3d 770, 775-76 (E.D. Mich. 2025) (rejecting plaintiff's argument that Michigan law provides a singular default rule that interprets "actual cash value" as "replacement cost less depreciation" in all contexts.)[7]  Accordingly, the Court rejects Plaintiff's contention that "under

---

[7] The Court notes that the Michigan Supreme Court, in a footnote in *Smith v. Michigan Basic Prop. Ins. Ass'n*, described actual cash value as "replacement cost less depreciation" in the context of a homeowner's policy.  441 Mich. 181, 196 n.28 (1992).  However, the Court is persuaded by the reasoning in *Jollis v. Amica Mut. Ins.Co.*, which observed that *Smith* does not make clear whether this language reflected the specific policy language at issue or a broader statement of Michigan law.  804 F. Supp. 3d at 775-76. Given this uncertainty, the Court concludes that the Michigan Supreme Court would not have departed from its established precedent in *Davis v. Nat'l Am. Ins. Co.* by embedding a new definition of ACV in dicta within a footnote.

Michigan common law, [ACV] means the vehicle's replacement cost, less depreciation." (ECF No. 35 at PageID.642.)

Under the Broad Evidence Rule, a vehicle's ACV may be determined by "any evidence logically tending to the formation of a correct estimate of the value of the destroyed or damaged property." *Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 688 (6th Cir. 2012) (quoting *Evanston Ins. Co. v. Cogswell Props., LLC,* No. 1:08-CV-475, 2009 WL 198745 (W.D. Mich. Jan. 23, 2009) (citing *Davis*, 78 Mich. App. at 233.)) Therefore, a number of factors may be used to calculate ACV, so long as the evidence logically contributes to forming an accurate estimate of the property's value.

A genuine dispute of material fact exists as to whether Defendant's third-party vendor, Audatex, considered appropriate evidence when calculating Plaintiff's ACV. Although the Broad Evidence Rule allows for consideration of a wide range of information in determining ACV, neither party has identified any controlling law from this jurisdiction that specifies which types of evidence are proper or improper to consider. (ECF No. 35 at PageID.642; ECF No. 36 at PageID.672, n. 1.) Plaintiff argues that Audatex's use of negotiable adjustments improperly reduced the ACV of her vehicle and that Defendant's reliance on this

11

calculation constitutes a breach of the policy.[8]  *See supra.*  Plaintiff has met her

burden of showing that there is a genuine issue of material fact by demonstrating

that none of the appraisers applied a negotiation adjustment in their ACV

assessments and reached a different calculation.  (ECF No. 35 at PageID.641-42,

644-47.)

Thus, because the Parties fundamentally disagree about whether the

negotiation adjustment was an appropriate component of the ACV analysis, the

Court concludes that this factual question is best determined by a jury.

### B. Damages and Mootness

Similarly, the Court is not convinced that Defendant's decision to make

Plaintiff whole—several years after the disputed transaction—supports a theory

that Plaintiff cannot now prove damages.  (ECF No. 33 at PageID.472-74.)  The

Court acknowledges that the policy provides that each party "will pay the cost of

its own appraiser[9], and any attorney or expert witness hired by that party" during

the appraisal process.  (ECF No. 33-7 at PageID.535.)  But Plaintiff seeks more

than appraisal-related expenses and her requested damages do not all arise from the

appraisal itself.  Rather, several categories of damages stem from her allegation

---

[8] The Court acknowledges that Plaintiff's evidence on this issue is limited because the Defendant filed its motion for summary judgment before any discovery could take place.

[9] The policy also notes that "both parties will share equally the cost of the third appraiser and, by agreement, any other expenses of the appraisal."

that Defendant breached the contract when it first paid Plaintiff—before this lawsuit was initiated and before the Court compelled appraisal. *See Johnson v. Am. Fam. Ins. Co.*, No. 22-CV-214-JDP, 2023 WL 2733674, at *10 (W.D. Wis. Mar. 31, 2023) (recognizing that an appraisal award does not necessarily resolve a plaintiff's broader claims for damages arising from an insurer's breach.)

Plaintiff seeks pre-judgment and post-judgment interest, litigation costs, penalties, attorneys fees and expenses, and compensatory damages associated with her breach of contract action.  (ECF No. 15 at PageID.232.)  The policy's cost-allocation provision for the appraisal process is distinct from, and does not foreclose, Plaintiff's ability to pursue damages in litigation based on an alleged breach of contract.

On a related point, the Court is not persuaded that Plaintiff's claims are now moot simply because Defendant has paid the appraisal award.  (ECF No. 33 at PageID.463-65, 468; ECF No 36 at PageID.676.)  A case is moot if it "loses its character as an actual, live controversy at any point during its pendency." *Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir.2009).  And if that occurs, "the case is no longer within the jurisdiction of the federal courts and therefore must be dismissed."  *Id.*; *see also Ahmed v. Univ. of Toledo*, 822 F.2d 26, 27 (6th Cir.1987).

Defendant argues that its second payment, which compensated Plaintiff for the full appraisal amount, rendered her claim moot, yet it cites no controlling authority or any case law from this jurisdiction to support that proposition.  (ECF No. 36 at PageID.676.)  Plaintiff, by contrast, cites Supreme Court precedent recognizing the "formidable burden" a defendant faces when "claiming that its voluntary compliance moots a case."  (ECF No. 35 at PageID.657) (citing *Friends of the Earth v. Laidlaw Env't Servs (TOC), Inc*, 528 U.S. 167, 170 (2000)).[10]

In *Friends of the Earth v. Laidlaw Env't Servs (TOC), Inc*, the Supreme Court of the United States reversed the appellate court's judgment and concluded that the defendant's post-litigation compliance did not render the plaintiff's claims moot.  *Friends of the Earth*,  528 U.S. at 190.  Although *Friends of the Earth* concerned regulatory compliance instead of contractual compliance, its discussion of voluntary cessation provides helpful guidance for evaluating mootness here. The Supreme Court explained that "the standard . . . for determining whether a case has been mooted by a defendant's voluntary conduct is stringent" and that a case becomes moot only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Id.* at 189 (citing *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)).  The

---

[10] Plaintiff provides a citation to the decision's syllabus, but the quote is also discussed in the opinion.  *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

14

"heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to arise again lies with the party asserting mootness. *Id.*

Here, as discussed above, although Plaintiff has now been paid the full appraisal award representing her true ACV, her breach of contract claim remains live. Moreover, Plaintiff has initiated a putative class action. (*See* ECF No. 15 at PageID.212.) And even if the Court resolved her claim, the Sixth Circuit has made clear that a named plaintiff may continue to "represent a putative class in two circumstances: (1) their claims were involuntarily terminated, or (2) the named plaintiff retains a personal stake in the case because they would be able to shift litigation costs to the class members if they prevail in their attempted class certification." *Gawry v. Countrywide Home Loans*, Inc.395 F. App'x 152, 156 (6th Cir. 2010) (citing *Pettrey*, 584 F.3d at 704-05). First, Plaintiff's claims have not been terminated. As discussed above, the Court finds that genuine issues of material facts warrant a denial of Defendant's motion for summary judgment. *See supra* Section A. Second, Plaintiff has made clear that class action serves as a way to both pool resources and share costs to challenge Defendant's use of Audatex. (*See* ECF No. 15 at PageID.227) ("Because of the disparity of resources available to Defendant versus those available to individual members of the Class, prosecution of separate actions would work a financial hardship[.] [T]he conduct of this action as a class action conserves the resources of the parties." Accordingly,

15

the Court rejects Defendant's claim that Plaintiff's claims are moot and that the case must be dismissed.

## IV.    Conclusion

The Court finds that (1) a genuine dispute of material fact exists regarding whether Defendant breached the Parties' insurance policy; (2) Plaintiff maintains viable claims for damages, and (3) Plaintiff's claims are not moot.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 33) is **DENIED.**

s/ Linda V. Parker<br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: March 31, 2026

16